Roger Reeves
vs.                                                          1:07 cv 616 MHT

DSI security et al MOTION RECEIVED OPPOSE DISMISSION

Of Plaintiff Case AND

2007 OCT -1 A 9 16
DEBRA P. HACKETT, CL
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

ASK FOR SUMMARY JUDGEMENT

STATEMENT of FACTS

I the Plaintiff Roger Reeves am stating

that EEOC violated my Civil Right and walked out

of the Negoiations and created more than inference

of Collusion. EEOC in Website and Documentaion

Given to Plaintiff states that an ADR person must

be fair and impartial. I am enclosing Documents showing

Website that states Federal ADR Personell must adhere

to BAR Association and other Rules. I was

deprived of an impartial and fair ADR Process.

I suffered monetary loss. The second ADR Session

was more Deceptive and frought with Fraud than the first

One.

EEOC does not have immunity to break the Law at wills. They are subject to All Laws and rules of Courts as other Companies, Persons, and Organizations. TITLE VII does not Grant EEOC such a right.

EEOC is subject to all law and rules governing Contract as other Citizens. They cannot break the Laws and Say I did not want to negoiate fairly and I am free because I am a government entity. If such a Claim was true EEOC would Never have to without fulfill their own Contract to deal fairy justly, breaking rules at will.

I am enclosing Document showing rules and laws that EEOC must adhere to. In the case of Alexander V. Gardner-Denver (415 U.S. 36) (1974) its more then states that a Title VII dispute can go to Court. EEOC broke there own Title VII statues to' Discrimination. EEOC on their Web Site had rules and Guidelines (before my Case STARTED) and procedures to take against a bad ADR mediator. Those rules have Since been remove from the Web Site. EEOC has done this in defiance and with retaliatory actions.

I believe the Law was broken Here. I think the Case should be dimissed and judgement awarded in Default,

My Case against EEOC is not a case of slight error but harm that cause Monetary Loss. In Cases Sighted by Defending Attorney error would not cause financial harm Regress by Court could have been avoided by an impartial Mediator. To Seek regress in Court Subject Plaintiff to great financial loss which could have been avoided. The purpose of ADR was to avoid Court Cost.

Mrs. LEO prejudice my case and I ask for another Mediator. She said she was sending Someone from her Montgomery Office. She Came under deception and quirk and Conducted the mediation herself. She did irreprobable damage to the Mediation Process and Mediators by doing that.

The previos Mediator MR. Lee prejudice the mediation Process by stating This "CAT" does not Know What he is doing and Left the room with the other Side,

I Sought through EEOC Point Channel up to the ASST. Director and DIRECTOR of EEOC my complaint but NO Solution was put forth. The Assistance Director prejudice my complaint when I told her and stated I did not

have a Case, I had told her from the beginning of the Conversation that I was in Mediation but she would not hear me.

EEOC did not persue my Case with American Building. American Building is my Employer as is DSI. John Howard who is pasanel Manager for Plant gives instruction from Day to Day on thing to do and exactly how to do them. He puts in paperwork for raises. He is more supervisor then DSI.

EEOC has also remove all information from Geor't Website stating how to complain or take action against EEOC. I think this is in retaliation against my filing a Charge.

EEOC director and Rules Commite did not follow Proper Procedures when they recieve a Complaint that an employee had committed a violation (Per attachment).

EEOC has mechanism within their own system to award monetary damages if they were proven faulty in the Discrimintory Process. Their rules and guidelines Per Resolution Act 5 were not followed.

ARBitration Can be subject to judicial review under Section 10(b) [2] of title 9.

EEOC through mediation does not have an implied right to break the Law at will.

Under Title 9 decision Arbitrators Can be under judicial review as per Document enclosed.

My Complaint should Not be Dismissed for failure to state a Claim. Only when plaintiff Could Not prove any facts Could such a Claim be dismissed as per Document.

Evidence Support to Defeat Summary Judgement is also given in term(dictionary) at end of motion

Certificate of Service

I hereby Certify on Sept. 28, 2007
I filed with the Clerk of the Court and a
Copy of this Document was mailed to

Danielle J. HAYOT

US Equal Employment Opportunity Commission

Office of Legal Counsel

1801 L Street N.W.

Washington, D.C. 20507

Roger Reeve

Signed this 28 day
of Sept. 2007

Karen Creighton

Comm Exp - 3/26/10

9/28/07

Roger Reeve

eeocadr

(although they are expected to adhere to the Code of Ethics for Arbitrators in Commercial Disputes, established in 1977 by the AAA and the AMERICAN BAR ASSOCIATION).

They are often selected for their expertise in a particular area of business, and may be drawn from private practice or from organizations such as the American Arbitration Association (AAA), a national non-profit group founded in 1926. Significantly, arbitrators are freer than judges to make decisions, because they do not have to abide by the principle of stare decisis (the policy of courts to follow principles established by legal precedent) and do not have to give reasons to support their awards (although they are expected to adhere to the Code of Ethics for Arbitrators in Commercial Disputes, established in 1977 by the AAA and the AMERICAN BAR ASSOCIATION).

The FAA gives only four grounds on which a court may vacate, or overturn, an award: (1) where the award is the result of corruption, FRAUD, or undue means; (2) where the arbitrators were evidently partial or corrupt; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing or hear pertinent evidence, or where their misbehavior prejudiced the rights of any party; and (4) where the arbitrators exceeded their powers or imperfectly executed them so that a mutual, final, and definite award was not made. In the 1953 case Wilko v. Swan, 346 U.S. 427, 74 S. Ct. 182, 98 L. Ed. 168, the U.S. Supreme Court suggested, in passing, that an award may be set aside if it is in "mani-fest disregard of the law," and federal courts have sometimes followed this principle. Public policy can also be grounds for vacating, but this recourse is severely limited to well-defined policy based on legal precedent, a rule emphasized by the Supreme Court in the 1987 case United Paperworkers International Union v

. Misco, 484U.S. 29, 108 S. Ct. 364, 98 L. Ed. 2d 286

Preface
The model standards of conduct for mediators are intended to perform three major functions: to serve as a guide for the conduct of mediators; to inform the mediating parties; and to promote public confidence in mediation as a process for resolving disputes. The standards draw on existing codes of conduct for mediators and take into account issues and problems that have surfaced in mediation practice. They are offered in the hope that they will serve an educational function and provide assistance to individuals, organizations, and institutions involved in mediation.

I. Self-Determination: A Mediator Shall Recognize that Mediation is Based on the Principle of Self-Determination by the Parties.
Self-determination is the fundamental principle of mediation. It requires that the mediation process rely upon the ability of the parties to reach a voluntary, uncoerced agreement. Any party may withdraw from mediation at any time.

COMMENTS:
The mediator may provide information about the process, raise issues, and help parties explore options. The primary role of the mediator is to facilitate a voluntary resolution of a dispute. Parties shall be given the opportunity to consider all proposed options.
A mediator cannot personally ensure that each party has made a fully informed choice to reach a particular agreement, but is a good practice for the mediator to make the parties aware of the importance of consulting other professionals, where appropriate, to help them make informed decisions.
II. Impartiality: A Mediator Shall Conduct the Mediation in an Impartial Manner.
The concept of mediator impartiality is central to the mediation process. A mediator shall mediate only those matters in which she or he can remain impartial and evenhanded. If at any time the mediator is unable to conduct the process in an impartial manner, the mediator is obligated to withdraw.

eeocadr

COMMENTS:
A mediator shall avoid conduct that gives the appearance of partiality toward one of the parties. The quality of the mediation process is enhanced when the parties have confidence in the impartiality of the mediator.
When mediators are appointed by a court or institution, the appointing agency shall make reasonable efforts to ensure that mediators serve impartially.
A mediator should guard against partiality or prejudice based on the parties' personal characteristics, background or performance at the mediation.
III. Conflicts of Interest: A Mediator Shall Disclose all Actual and Potential Conflicts of Interest Reasonably Known to the Mediator. After Disclosure, the Mediator shall Decline to Mediate unless all Parties Choose to Retain the Mediator. The Need to Protect Against Conflicts of Interest also Governs Conduct that Occurs During and After the Mediation.
A conflict of interest is a dealing or relationship that might create an impression of possible bias. The basic approach to questions of conflict of interest is consistent with the concept of self-determination. The mediator has a responsibility to disclose all actual and potential conflicts that are reasonably known to the mediator and could reasonably be seen as raising a question about impartiality. If all parties agree to mediate after being informed of conflicts, the mediator may proceed with the mediation. If, however, the conflict of interest casts serious doubt on the integrity of the process, the mediator shall decline to proceed.

A mediator must avoid the appearance of conflict of interest both during and after the mediation. Without the consent of all parties, a mediator shall not subsequently establish a professional relationship with one of the parties in a related matter, or in an unrelated matter under circumstances which would raise legitimate questions about the integrity of the mediation process.

COMMENTS:
A mediator shall avoid conflicts of interest in recommending the services of other professionals. A mediator may make reference to professional referral services or associations which maintain rosters of qualified professionals.
Potential conflicts of interest may arise between administrators of mediation programs and mediators and there may be strong pressures on the mediator to settle a particular case or cases. The mediator's commitment must be to the parties and the process. Pressure from outside of the mediation process should never influence the mediator to coerce parties to settle.
IV. Competence: A Mediator Shall Mediate Only When the Mediator has the Necessary Qualifications to Satisfy the Reasonable Expectations of the Parties.
Any person may be selected as a mediator, provided that the parties are satisfied with the mediator's qualifications. Training and experience in mediation, however, are often necessary for effective mediation. A person who offers herself or himself as available to serve as a mediator gives parties and the public the expectation that she or he has the competency to mediate effectively. In court-connected or other forms of mandated mediation, it is essential that mediators assigned to the parties have the requisite training and experience.

COMMENTS:
Mediators should have information available for the parties regarding their relevant training, education and experience.
The requirements for appearing on the list of mediators must be made public and available to interested persons.
When mediators are appointed by a court or institution, the appointing agency shall make reasonable efforts to ensure that each mediator is qualified for the particular mediation.
V. Confidentiality: A Mediator Shall Maintain the Reasonable Expectations of the Parties with Regard to Confidentiality.
The reasonable expectations of the parties with regard to confidentiality shall be met by the mediator. The parties' expectations of confidentiality depend on the circumstances of the mediation and any agreements they may make. The mediator shall not disclose any matter that a party expects to be confidential unless given permission by all parties or unless required by law or other public policy.

eeocadr

COMMENTS:
The parties may make their own rules with respect to confidentiality, or other accepted practice of an individual mediator or institution may dictate a particular set of expectations. Since the parties' expectations regarding confidentiality are important, the mediator should discuss these expectations with the parties.
If the mediator holds private sessions with a party, the nature of these sessions with regard to confidentiality should be discussed prior to undertaking such sessions.
In order to protect the integrity of the mediation, a mediator should avoid communicating information about how the parties acted in the mediation process, the merits of the case, or settlement offers. The mediator may report, if required, whether parties appeared at a scheduled mediation.
Where the parties have agreed that all or a portion of the information disclosed during a mediation is confidential, the parties' agreement should be respected by the mediator.
Confidentiality should not be construed to limit or prohibit the effective monitoring, research, or evaluation of mediation programs by responsible persons. Under appropriate circumstances, researchers may be permitted to obtain access to the statistical data and, with the permission of the parties, to individual case files, observations of live mediations, and interviews with participants.
VI. Quality of the Process: A Mediator Shall Conduct the Mediation Fairly, Diligently, and in a Manner Consistent with the Principle of Self-Determination by the Parties.
A mediator shall work to ensure a quality process and to encourage mutual respect among the parties. A quality process requires a commitment by the mediator to diligence and procedural fairness. There should be adequate opportunity for each party in the mediation to participate in the discussions. The parties decide when and under what conditions they will reach an agreement or terminate a mediation.

COMMENTS:
A mediator may agree to mediate only when he or she is prepared to commit the attention essential to an effective mediation.
Mediators should only accept cases when they can satisfy the reasonable expectations of the parties concerning the timing of the process. A mediator should not allow a mediation to be unduly delayed by the parties or their representatives.
The presence or absence of persons at a mediation depends on the agreement of the parties and the mediator. The parties and mediator may agree that others may be excluded from particular sessions or from the entire mediation process.
The primary purpose of a mediator is to facilitate the parties' voluntary agreement. This role differs substantially from other professional-client relationships. Mixing the role of a mediator and the role of a professional advising a client is problematic, and mediators must strive to distinguish between the roles. A mediator should, therefore, refrain from providing professional advice. Where appropriate, a mediator should recommend that parties seek outside professional advice, or consider resolving their dispute through arbitration, counseling, neutral evaluation, or other processes. A mediator who undertakes, at the request of the parties, an additional dispute resolution role in the same matter assumes increased responsibilities and obligations that may be governed by the standards of other processes.
A mediator shall withdraw from a mediation when incapable of serving or when <u>unable to remain impartial</u>.
A mediator shall withdraw from a mediation or postpone a session if the mediation is being used to further illegal conduct, or if a party is unable to participate due to drug, alcohol, or other physical or mental incapacity.
Mediators should not permit their behavior in the mediation process to be guided by a desire for a high settlement rate.
VII. Advertising and Solicitation: A Mediator Shall be Truthful in Advertising and Solicitation for Mediation
Advertising or any other communication with the public concerning services offered or regarding the education, training, and expertise of the mediator shall be truthful. Mediators shall refrain from promises and guarantees of results.

eeocadr

COMMENTS:
It is imperative that communication with the public educate and instill confidence in the process.
In an advertisement or other communication to the public, a mediator may make reference to meeting state, national, or private organization qualifications only if the entity referred to has a procedure for qualifying mediators and the mediator has been duly granted the requisite status.
VIII. Fees: A Mediator Shall Fully Disclose and Explain the Basis of Compensation, Fees, and Charges to the Parties.
The parties should be provided sufficient information about fees at the outset of a mediation to determine if they wish to retain the services of a mediator. If a mediator charges fees, the fees shall be reasonable, considering among other things, the mediation service, the type and complexity of the matter, the expertise of the mediator, the time required, and the rates customary in the community. The better practice in reaching an understanding about fees is to set down the arrangements in a written agreement.

COMMENTS:
A mediator who withdraws from a mediation should return any unearned fee to the parties.
A mediator should not enter into a fee agreement which is contingent upon the result of the mediation or amount of the settlement.
Co-mediators who share a fee should hold to standards of reasonableness in determining the allocation of fees.
A mediator should not accept a fee for referral of a matter to another mediator or to any other person.
IX. Obligations to the Mediation Process: Mediators have a Duty to Improve the Practice of Mediation.
COMMENT:
Mediators are regarded as knowledgeable in the process of mediation. They have an obligation to use their knowledge to help educate the public about mediation; to make mediation accessible to those who would like to use it; to correct abuses; and to improve their professional skills and abilities.

Comments

----------------------------------------------------------------------------

Free subscription to comments on this article Add Brief Comment

Nidia ,   Castelli Ch    01/17/05

Untitled
Sec. 7.10 Responsibilities of the Director of EEO.

(h) Providing for the prompt, fair and impartial processing of
individual complaints involving claims of discrimination within the
Department subject to 29 CFR part 1614;

(i) Making the final decision on discrimination complaints and
ordering such corrective measures as may be necessary, including
disciplinary action warranted in circumstances where an employee has
been found to have engaged in a discriminatory practice.

Untitled

Courts should give res judicata effect to an arbitrator's award.  If the individual
employee signed an agreement to arbitrate, that employee should be barred from later
litigating the same claim.  One often sees <u>Alexander v. Gardner-Denver</u>, 415 U.S. 36
(1974), <u>cited as authority</u> for a <u>rule that an employee who is unhappy with the
outcome of an arbitration</u> of a Title VII <u>dispute can later get to court</u>.

employeerights

If you have an employment contract, you are not an at-will employee. The employment contract will generally define the reasons for which you can be terminated – usually, for "just cause" or other "legitimate, job related reasons. However, if your contract specifically states you are an employee at-will, you fall under the same rules as an at-will employee – you can be fired for any reason.

Employment contracts do not have to be in writing, however. An employment contract can be written or oral, or even based on a promise made by your employer, such as a promise that you wouldn't be fired, that your job would be secure, of a promise that you'd be working for a certain period of time.

Employment contracts take many different forms. All employees at a company may be asked to sign the same form contract, or each employee may have a contract with the employer that is applicable just to his or her employment agreement. An employer and an employee may simply have an oral agreement regarding the kind of work the employee will do, for how long, and at what rate of pay. Sometimes there is no written or oral agreement but the behavior of the employer and the employee can be viewed as an implied employment contract.

What Is A Covenant Of Good Faith And Fair Dealing
The covenant of good faith and fair dealing is found in every employment relationship, either pursuant to an employment at will or per a written employment agreement. In many cases, courts reason that such a covenant is implied in law. Filner v. Shapiro, 633 F.2d 139 (2d Cir.1980). The covenant of good faith and fair dealing "precludes each party from engaging in conduct that will deprive the other party of the benefits of their agreement." Id. (i.e. the bargain).

In essence, the covenant mandates that each party to an employment agreement (written contract or one at will), must act reasonably with the other party. If one party intentionally and negligently does some act that they knowingly or should have known would cause a detriment to the other, then the covenant has been breached. In many legal cases, this claim is asserted by an employee who claims he or she is owed wages, bonuses, or other compensation, which was unreasonably denied. In addition, the claim can be founded upon a wrongful termination of employment or benefits. However, the claim for a breach of the covenant cannot be maintained in instances where some other statutory protection is available, such as the Age Discrimination in Employment Act (ADEA) or some other federal, and state, statutes. Jurisdictions vary on the availability of this claim in light of other statutory protections.

Damages caused by the breach often are the financial loss caused by the breach. However, damages in employment cases must always be mitigated by the party asserting the breach of the covenant. What this means is that the employee must in good faith make reasonable and documented attempts to obtain the other benefits or compensation from third parties (i.e. new employment). The courts will examine the difference between the mitigation amount and the actual loss caused by the breach of the covenant.

Untitled

... the Equal Employment Opportunity Commission (EEOC). 12. ... of the agency, unless you show that there was "harmful error ... mandatory period of counseling and mediation with ...

www.mspb.gov/q&aappealsaug01.html

Untitled

TITLE 9 > CHAPTER 1 > § 10Prev | Next § 10. Same; vacation; grounds; rehearing

a) In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—
(1) where the award was procured by corruption, fraud, or undue means;
(2) where there was evident partiality or corruption in the arbitrators, or either of them;
(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

Untitled

(a) Notwithstanding any other provision of law, any person adversely affected or aggrieved by an award made in an arbitration proceeding conducted under this subchapter may bring an action for review of such award only pursuant to the provisions of sections 9 through 13 of title 9.
(b) A decision by an agency to use or not to use a dispute resolution proceeding under this subchapter shall be committed to the discretion of the agency and shall not be subject to judicial review, except that <u>arbitration shall be subject to judicial review under section 10 (b) [2] of title 9.</u>


(b) A party to a dispute resolution proceeding shall not voluntarily disclose or through discovery or compulsory process be required to disclose any dispute resolution communication, unless—
(1) the communication was prepared by the party seeking disclosure;
(2) all parties to the dispute resolution proceeding consent in writing;
(3) the dispute resolution communication has already been made public;
(4) the dispute resolution communication is required by statute to be made public;
(5) a court determines that such testimony or disclosure is necessary to—
(A) prevent a manifest injustice;
(B) help establish a violation of law; or
(C) prevent harm to the public health and safety,


i) Subsections (a) and (b) shall not prevent use of a dispute resolution communication to resolve a dispute between the neutral in a dispute resolution proceeding and a party to or participant in such proceeding, so long as such dispute resolution communication is disclosed only to the extent necessary to resolve such dispute.

Untitled

In Chapter 3 of the Management Directive MD-110, the EEOC established general ethical requirements for neutrals to follow in resolving EEO disputes in the federal sector. The neutral has a duty to the parties to be neutral, honest, and act in good faith. In addition, the neutral must ensure that the ADR proceedings are confidential, consistent with the Administrative Dispute Resolution Act, 5 U.S.C. § 574.

Interagency ADR Working Group, Confidentiality Guidance

## Table of Contents

§ 18.1    Duty.
§ 18.2    Breach of Duty.
§ 18.5    Statute of Limitations.

### CHAPTER 19    PRODUCTS LIABILITY

§ 19.0    Historical Development.
§ 19.1    Elements of the Alabama Extended Manufacturer's Liability Doctrine.
§ 19.3    Meaning of "Product."
§ 19.4    Meaning of "Sale."
§ 19.5    Meaning of "Defective, Unreasonably Dangerous."
    § 19.5.1    Flaw in the Product.
    § 19.5.2    Defective Design.
    § 19.5.3    Marketing Defects.
§ 19.6    Meaning of "Without Substantial Change."
§ 19.8    Defense of No Causal Relation.
§ 19.9    Contributory Negligence, Assumption of Risk or Product Misuse.
§ 19.10    Statute of Limitations.
§ 19.11    Corporate Successors to Manufacturers.
    § 19.11.1    Causation and Damages.
§ 19.12    Damage to Product Itself.
§ 19.13    Preemption.

### CHAPTER 20    FRAUD AND RELATED ACTIONS

§ 20.0    Introduction.
§ 20.1    Pleadings.
§ 20.2    Relationship of Contract and Fraud.
    § 20.2.1    Fraud and ERISA.
    § 20.2.2    Effect of Predispute Arbitration Clauses.
§ 20.3    Misrepresentations of Existing Fact.
§ 20.4    Falsity of the Facts Represented.
§ 20.5    Representations of Law.
§ 20.6    Representations of Opinion.
§ 20.8    Identity of Representee.
§ 20.9    Materiality of the Facts Represented.
§ 20.10    Reasonable or Justifiable Reliance.
    § 20.10.1    Necessity of Reliance.
    § 20.10.3    1989 Justifiable Reliance.

*Table of Contents*

§ 20.22.3  Motor Vehicle Lemon Law Rights.
§ 20.22.4  Private Remedies Under Alabama Securities Law.

**CHAPTER 21  BAD FAITH**

§ 21.0   Historical Development.
§ 21.1   Insurance Contract Between the Parties and Breach.
§ 21.2   Intentional Refusal to Pay.
§ 21.3   Absence of a Debatable Reason.
§ 21.4   Insurer's State of Mind—Actual Knowledge of Absence of Debatable Reason or Intentional Failure to Determine Whether There is Debatable Reason.
§ 21.5   Damages.
§ 21.9   Preemption by ERISA.
§ 21.10  Excess Judgment or Refusal-to-Settle Cases.

**CHAPTER 22  INVASION OF PRIVACY**

§ 22.0   Historical Development.
§ 22.1   Forms of Invasion of Privacy.
    § 22.1.1  Wrongful Intrusion.
    § 22.1.2  Publication Which Violates Ordinary Decencies.
    § 22.1.3  Putting the Plaintiff in a False But Not Necessarily Defamatory Position in the Public Eye.
    § 22.1.4  The Appropriation of Some Element of Plaintiff's Personality.
§ 22.2   Damages for Invasion of Privacy.

**CHAPTER 23  TORT OF OUTRAGE**

§ 23.0   Historical Development.
§ 23.1   Employment.
§ 23.2   Workers' Compensation Claims.
§ 23.3   Insurance Claims.
§ 23.4   Cases Involving Burial and Dead Bodies.
§ 23.5   Public Duty and Other Cases.
§ 23.6   Statute of Limitations.

**CHAPTER 24  DEFAMATION**

§ 24.0   Introduction.
    § 24.0.1  Distinguishing Between Libel and Slander.
§ 24.1   Words or Communication Actionable or Defamatory.

(Rel.2002s–9/02 Pub.66645)

## Table of Contents

§ 20.10.4  1997 Return to Reasonable Reliance Standard.
§ 20.11  Injury to the Plaintiff.
§ 20.12  State of Mind of the Defendant.
§ 20.12.2  Reckless Misrepresentations.
§ 20.12.3  Intentional Misrepresentations.
§ 20.13  Evidence of Fraudulent Intent.
§ 20.13.1  Direct Evidence Defendant Knew the Truth of the Matter Misrepresented.
§ 20.13.2  Failure to Perform the Promises and Representations.
§ 20.13.3  Conduct by the Defendant Outside Plaintiff's Presence Inconsistent with his Intention to Honor Plaintiff's Rights.
§ 20.13.5  Statements by the Defendant Relative to His Intentions.
§ 20.13.6  Defendant's Deceptive or Unreasonable Conduct Toward Others.
§ 20.14  State of Mind of an Agent.
§ 20.15  Representations or Promises Relating to Future Acts.
§ 20.16  Suppression of Material Facts.
§ 20.16.1  Confidential Relations Requiring Duty to Disclose.
§ 20.16.2  Particular Circumstances Requiring Duty to Disclose.
§ 20.17  Evidence of Relationships Requiring Duty to Disclose.
§ 20.17.1  Vendees and Vendors (or Realtors) of Real Estate or Interests Therein.
§ 20.17.3  Buyers and Sellers of Products.
§ 20.17.4  Insurers and Claimants.
§ 20.17.5  Financial Institutions or Lenders and Borrowers or Customers.
§ 20.18  Compensatory Damages.
§ 20.18.2  Property Value Differential.
§ 20.18.3  Mental Suffering.
§ 20.18.4  Lost Profits.
§ 20.18.5  Attorney Fees.
§ 20.19  Punitive Damages.
§ 20.20  Statute of Limitations.
§ 20.21  Fraudulent Conveyances or Transfers.
§ 20.21.1  Pre-1990 Fraudulent Conveyances Law.
§ 20.21.2  1990 Fraudulent Transfers Law.
§ 20.22  Consumer Protection Statutes.
§ 20.22.1  Deceptive Trade Practices Act.
§ 20.22.1.1 Sweepstakes Solicitations.
§ 20.22.2  Telecommunication Statutes.

x

## Table of Conter

§ 20.22.3
§ 20.22.4

**CHAPTER 21  BA**

§ 21.0  Historical I
§ 21.1  Insurance (
§ 21.2  Intentional
§ 21.3  Absence of
§ 21.4  Insurer's S
or Intentio
§ 21.5  Damages.
§ 21.9  Preemptio
§ 21.10  Excess Juc

**CHAPTER 22  IN**

§ 22.0  Historical
§ 22.1  Forms of
§ 22.1.1
§ 22.1.2
§ 22.1.3

§ 22.1.4
§ 22.2  Damages

**CHAPTER 23  T**

§ 23.0  Historica
§ 23.1  Employn
§ 23.2  Workers
§ 23.3  Insuranc
§ 23.4  Cases Ir
§ 23.5  Public I
§ 23.6  Statute (

**CHAPTER 24**

§ 24.0  Introduc
§ 24.0.
§ 24.1  Words

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MAPLE PROPERTIES, INC.          :
                                :
            v.                  :           CIVIL ACTION
                                :
TOWNSHIP OF UPPER PROVIDENCE,    :           NO. 00-4838
BOARD OF SUPERVISORS OF UPPER   :
PROVIDENCE TOWNSHIP, JOHN F.    :
PEARSON, ROBERT N. MAUGER, and  :
HOWARD P. HUBER, Individually,  :
Supervisors Upper Providence    :
Township                        :


M E M O R A N D U M

WALDMAN, J.                              September 12, 2001

Introduction

Plaintiff has asserted claims under 42 U.S.C. § 1983 for an alleged deprivation of property rights in violation of the guaranties of procedural and substantive due process and its right to equal protection arising from enactment by the Board of Supervisors of Upper Providence Township of Ordinance 384 which prohibited plaintiff's planned use of a property. Presently before the court is defendants' Motion to Dismiss on grounds of abstention and for failure to state a claim.[1]

---

[1] Dismissal for failure to state a claim is appropriate when it clearly appears that plaintiff can prove no set of facts to support the claim which would entitled her to relief. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Robb v. Philadelphia, 733 F.2d 286, 290 (3d Cir. 1984). Such a motion tests the legal sufficiency of a claim accepting the veracity of the claimant's allegations. See Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990); Sturm v. Clark, 835 F.2d 1009, 1011 (3d Cir. 1987). A complaint may be dismissed when the facts alleged and the reasonable inferences therefrom are legally insufficient to support the relief sought. See Pennsylvania ex. rel. Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 179 (3d Cir. 1988).

| | |
|---|---|
| DISTRICT COURT, CITY AND COUNTY OF DENVER, STATE OF COLORADO<br><br>1437 Bannock Street<br>Denver, Colorado 80202<br><br>PASTOR MICHAEL DANIELSON, COLORADO CRIMINAL JUSTICE REFORM COALITION, AND COLORADO CURE,<br>Plaintiffs,<br><br>v.<br><br>GIGI DENNIS, IN HER OFFICIAL CAPACITY AS SECRETARY OF STATE FOR THE STATE OF COLORADO,<br><br>Defendant. | Case No. 06 CV 954<br><br>COURTROOM 9 |

| **ORDER** |
|---|

THIS MATTER is before me on multiple motions filed by the Defendant Secretary of State (hereinafter "Secretary") and the Plaintiffs, Pastor Michael Danielson, Colorado Criminal Justice Reform Coalition and Colorado Cure (hereinafter "Plaintiffs"). Defendant Secretary's Motion to Dismiss for failure to state a claim under COLO. R. CIV. P. ("CRCP") 12(b)(5) was filed on February 27, 2006 and Plaintiffs' Combined Motion for Determination of a Question of Law pursuant to CRCP 56(h) and Response to Motion to Dismiss was filed March 22, 2006. I have considered the motions and the arguments of counsel as set forth in the hearing held May 5, 2006. I have also considered all pertinent pleadings, the court file and all relevant authorities, and being sufficiently advised, conclude as follows.

The Plaintiffs' contend that COLO. REV. STAT. §1-2-103(4) (2005) violates the Colorado Constitution's guarantee of the right to vote following release from imprisonment and that the provisions of section 1-2-103(4), which bar parolees from voting or registering to vote, are violative of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. The Defendant seeks to dismiss the Complaint and all claims therein on the following grounds: 1) The organizational Plaintiffs lack jurisdiction pursuant to § 1-1-113(1) of the Colorado Revised Statutes; 2) § 1-2-103(4) is consistent with and does not violate the Equal Protection Clause; and 3) § 1-2-104(4) is consistent with and constitutional under the COLO. CONST. art. VII, §10.

# STANDARD OF REVIEW

The well-established standard of review is a deferential one. In addressing a Motion to Dismiss under CRCP 12(b)(5), the court must view the allegations in the complaint in the light most favorable to plaintiffs, *Dunlap v. Colorado Springs Cablevision, Inc.*, 829 P.2d 1286 (Colo. 1992), and accept all averments of material fact contained in the complaint as true. *Rosenthal v. Dean Witter Reynolds, Inc.*, 908 P.2d 1095, (Colo. 1995) (quoting *Shapiro & Meinhold v. Zartman*, 823 P.2d 120, 122-23 (Colo. 1992). The court cannot grant a motion to dismiss for failure to state a claim unless "it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim(s) which would entitle [them] to relief." *Dunlap*, 829 P.2d at 1291.

Summary Judgment is proper under CRCP 56(c) if there is no genuine issue of material fact necessary for the determination of a question of law. The rule is properly to be exercised only where the facts are clear and undisputed and the sole duty remaining for the court is the determination of the correct legal principles applicable to those facts. *Rogerson v. Rudd*, 140 Colo. 548, 551, 345 P.2d 1083 (1959). The moving party has the burden of presenting sufficient evidence to establish that there is no genuine issue of material fact in order to succeed in their motion. *Mehaffy, Ricer, Windholz & Wilson v. Cent. Bank of Denver, N.A.*, 892 P.2d 230, 235 (Colo. 1995). Once the moving party has met its burden by demonstrating there is no issue of material fact, the burden shifts to the non-moving party to establish the existence of a triable issue of material fact. *Greenwood Trust v. Conley*, 938 P.2d 1141 (Colo. 1997).

# FINDINGS AND ORDER

The following facts, as relevant here, are undisputed:

1) The Plaintiff, Pastor Danielson ("Danielson") was sentenced to a term of imprisonment and is currently serving a period of parole. (Comp. ¶ 5.)

2) Plaintiff Colorado Criminal Justice Reform Coalition ("CCJRC") is a not-for-profit Colorado corporation. (Comp. ¶ 7.)

3) CCJRC membership includes Colorado citizens who are currently on parole, who would otherwise be eligible to vote. (Comp. ¶ 7.)

4) Plaintiff Colorado-CURE ("CURE") is a not-for-profit Colorado organization of families, prisoners, former prisoners and other citizens concerned with reform of the criminal justice system. (Comp. ¶ 8.)

5) Danielson now brings this action on behalf of himself, CCJRC and CURE and against the Secretary of the State of Colorado based on the alleged unconstitutionality of § 1-2-103(4). (Comp. ¶ 10.)

2

The DIGEST Of Equal Employment Opportunity Law    eeoc
Volume XIII, No. 3

Office of Federal Operations

Summer Quarter 2002

Discrimination Found. Complainant was discriminated against, based on national origin (Arab/Egyptian), and religion (Muslim), when he was not selected for two agency positions. The Commission also awarded complainant $75,000 in non-pecuniary damages and reimbursement for proven medical expense. Ghazzawi v. United States Postal Service EEOC Appeal No. 01A15327 (April 23, 2002).

Pretext
Pretext Found. The Commission found that the agency's reason for not promoting complainant during his detail as a Garbage Truck Driver (a delay in paperwork and a lack of agency funds), was unworthy of belief. The agency official in charge of processing the paperwork averred that he was processing the necessary paperwork and that complainant could be paid at the higher rate. However, the agency was unable to prove that it even began processing the paperwork. Further, complainant's immediate supervisors obstructed his being paid at the higher rate. The Commission found, accordingly, that the agency discriminated against complainant based on race, color, and retaliation. Ford v. Department of the Army, EEOC Request No. 05980506 (December

. When the Commission orders an award of Back Pay, what does it mean?

Back Pay is an equitable remedy that includes monetary benefits and all forms of compensation, reflecting fluctuations in working time, overtime, rates, penalty overtime, Sunday premium and night work, changing rates of pay, transfers, promotions, and privileges of employment. See Cass v. Department of Veterans Affairs, EEOC Petition No. 04A10014 (March 14, 2002).

2. What is meant by an equitable remedy?

An equitable remedy is "make whole relief" designed to restore the complainant as much as possible to the position he/she would have been in absent discrimination. See Finlay v. United States Postal Service, EEOC Appeal No. 01942985 (April 29, 1997) (citing Albemarle Paper Co. v. Moody, 422 U.S. 405 (1975)).The burden of limiting the remedy rests on the agency. Finlay supra.

3. Where does the Commission get its authority to award back pay?

EEOC's authority to award back pay is derived from the remedial provisions of Title VII of the Civil Rights Act of 1964, as amended, and, by analogy, the Rehabilitation Act of 1973, as amended. See Ferguson v. United States Postal Service, EEOC Request No. 05880848 (May 8, 1990).

6. What are liquidated damages?

Untitled

collusion

-noun 1. a secret agreement, esp. for fraudulent or treacherous purposes; conspiracy: Some of his employees were acting in collusion to rob him. 2. Law. a secret understanding between two or more persons to gain something illegally, to defraud another of his or her rights, or to appear as adversaries though in agreement: collusion of husband and wife to obtain a divorce.

--------------------------------------------------------------------------------

[Origin: 1350–1400; ME (< MF) < L collūsiōn- (s. of collūsiō), equiv. to collūs(us) (ptp. of collūdere to collude) + -iōn- -ion]

-Synonyms 1. intrigue, connivance, complicity.
Dictionary.com Unabridged (v 1.1)
Based on the Random House Unabridged Dictionary, © Random House, Inc. 2006.

-noun 1. deceit, trickery, sharp practice, or breach of confidence, perpetrated for profit or to gain some unfair or dishonest advantage. 2. a particular instance of such deceit or trickery: mail fraud; election frauds. 3. any deception, trickery, or humbug: That diet book is a fraud and a waste of time.
4. a person who makes deceitful pretenses; sham; poseur.

--------------------------------------------------------------------------------

[Origin: 1300–50; ME fraude < OF < ML fraud- (s. of fraus) deceit, injury]

-Related forms
fraudful, adjective
fraud·ful·ly, adverb

"criminal deception," 1345, from O.Fr. fraude, from L. fraudem (nom. fraus) "deceit, injury." The noun meaning "impostor, humbug" is attested from 1850. Pious fraud "deception practiced for the sake of what is deemed a good purpose" is from 1563.

Main Entry: fraud
Function: noun
Etymology: Latin fraud- fraus
1 a : any act, expression, omission, or concealment calculated to deceive another to his or her disadvantage; specifically : a misrepresentation or concealment with reference to some fact material to a transaction that is made with knowledge of its falsity or in reckless disregard of its truth or falsity and with the intent to deceive another and that is reasonably relied on by the other who is injured thereby b : the affirmative defense of having acted in response to a fraud
2 : the crime or tort of committing fraud <convicted of securities fraud> —see also MISREPRESENTATION
NOTE: A tort action based on fraud is also referred to as an action of deceit.

ir·ra·tion·al     (ĭ-rāsh'ə-nəl)  Pronunciation Key
adj.

Not endowed with reason.
Affected by loss of usual or normal mental clarity; incoherent, as from shock.
Marked by a lack of accord with reason or sound judgment: an irrational dislike.
in·com·pe·tent     /ɪnˈkɒmpətənt/ Pronunciation Key - Show Spelled
Page 1

Untitled
Pronunciation[in-kom-pi-tuhnt] Pronunciation Key - Show IPA Pronunciation
-adjective 1. not competent; lacking qualification or ability; incapable: an
incompetent candidate.
2. characterized by or showing incompetence: His incompetent acting ruined the play.

3. Law. a. being unable or legally unqualified to perform specified acts or to be
held legally responsible for such acts.
b. inadmissible, as evidence.

-noun

in·com·pe·tent    /ɪnɨkɒmpɨtɨnt/ Pronunciation Key - Show Spelled
Pronunciation[in-kom-pi-tuhnt] Pronunciation Key - Show IPA Pronunciation
-adjective 1. not competent; lacking qualification or ability; incapable: an
incompetent candidate.
2. characterized by or showing incompetence: His incompetent acting ruined the play.

3. Law. a. being unable or legally unqualified to perform specified acts or to be
held legally responsible for such acts.
b. inadmissible, as evidence.

-noun


fraud

"criminal deception," 1345, from O.Fr. fraude, from L. fraudem (nom. fraus) "deceit,
injury." The noun meaning "impostor, humbug" is attested from 1850. Pious fraud
"deception practiced for the sake of what is deemed a good purpose" is from 1563.