IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

2007 OCT -9  A 10: 01

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

ROGER REEVES,

  Plaintiff,

       )
v.       )  CIVIL ACTION NO. 1:07CV616-MHT
       )     (WO)
DSI, et al.,     )
       )
  Defendants.   )

Evidentiary Summation

b. **Charging Party Does Not Meet the Legal Standard To Bring a Case of Religious Discrimination**  *Lying about Religion*

To date, there have been absolutely no acts of religious discrimination perpetrated on the Charging Party by DSI. The charging party has not been treated less favorably due to his sincerely held religious beliefs, nor has he been subjected to any form of harassment because of these beliefs. DSI has never been on notice that Charging Party held any particular religious belief, therefore, it is impossible to assume that the charging party could have been subject to discriminatory treatment.

*(5)*

Since charging party has failed to articulate how his religious beliefs bear any relation to his failure to receive a wage increase, and since there are no facts that could be produced to show that charging party has ever been treated differently due to his religious beliefs, it can only be reasoned that there is no legitimate basis for a claim of religious discrimination.

**CONCLUSION**

I can state unequivocally that Charging Party was not denied a wage increase due to his race or religion. As the facts clearly demonstrate that DSI did not discriminate against Charging Party, DSI respectfully submits that Charging Party's charge should be dismissed. Please call upon me if I can be of any further assistance during this investigation.

Sincerely,

Eddie Sorrells
General Counsel

Enclosures

4

# Evidentiary Summation

I am enclosing Document from my FOIA file showing Summation from DSI Counsel Show lies that was told.

(1) DSI did not change schedule when I requested it change because I wanted to go to Church on a certain day. Two white were allowed to have their day changed for religious purposes.

(2) DSI said they were negotiating when they were not. It was a one years renewable every year. A raise was only given because of charge file with EEOC. It was not a fair wage. Other post that DSI have have greater rates. Most guard ot other DSI post will not come to American Bldgs. because rate is so low. DSI knew I was religious from the beginning when I requested Sunday off for Church.

DSI said they were negotiating when they knew they were. They told me they were signing a Contract in 2006 around Memorial Day but they were lying there also

Mr. Howard stated in April (2006) that I was a fixture and that he would put in the paperwork. At that time he show no inclination that DSI and he was in Negotiation. I was only interested in a raise so I did not challenge DSI. No raise came forth. John Howard told me later that DSI had the paperwork.

(4) They did not have any employee except a returnee with more than one year service so they would not have expected a raise

(5) They knew I held a different religious view.

I am providing Evidence that shows

EEOC have problem with my Complaint from beginning to End. They receive the Charge on July 18, or so and did began processing it until Sept. and many Complaint. They don't show that I included American in my Complaint. America Building is my Employer as Much as DSI. John does firing, hiring, wages, processing and all instruction on what we should do Comes from him.

Document Example 2 in the Document shows this

The Mediation Document show in (1) that the Mediator does not decide who is right or wrong. Mrs. Leo prejured herself and then acted froudlent

I am aslo including Documentation to show
that wearing or showing the Confederat Flag does
Constitute a Hostile work environment.



# U.S. Equal Employment Opportunity Commission
## Birmingham District Office - 420

Ridge Park Place
1130 22nd Street, South
Birmingham, AL 35205
(205) 212-2100
TTY (205) 212-2112
FAX (205) 212-2105
1-800-669-4000

Respondent: DSI SECURITY SERVICES
EEOC Charge No.: 420-2006-03907

September 18, 2006

Roger Reeves
B12 Chattahoochee Court
Eufaula, AL 36027

Dear Mr. Reeves:

This is with reference to your recent inquiry (an office visit, phone call, or correspondence) in which you alleged employment discrimination by the above-named respondent. The information provided indicates that the matter complained of is subject to the following law:

[ X ]    Title VII of the Civil Rights Act of 1964 (Title VII)

The attached EEOC Form 5, Charge of Discrimination, was drafted as a result of the information provided. To enable proper handling of this action by the Commission you should:

(1)  Review the enclosed charge forms without making any changes.

(2)  Sign and date the charge in the bottom left hand block where I have made an "X". The date of signature on the charge will not affect the jurisdiction date established in any original written complaint previously given to EEOC.

(3)  Return the signed charge to this office in the enclosed envelope.

Since charges should be processed within the time limits imposed by law, please complete these steps within five days of your receipt of this letter. Please call me at the number listed below if you have any questions.

Please use the "EEOC Charge No." listed at the top of this letter whenever you call us about this charge. Please notify this office of any change in address or of any prolonged absence from home. Failure to cooperate in this matter may lead to dismissal of the charge.

Sincerely,

*Linda B. Poole*

Linda B. Poole
Investigator
(205) 212-2122

Office Hours: Monday – Friday, 8:00 a.m. - 4:30 p.m.

Enclosure(s)
    Copy of EEOC Form 5, Charge of Discrimination

*File Copy*

------------------------------------------------------------

Response (Courtney Forshey) - 08/16/2006 12:57 PM
TO: Director of the Birmingham District Office

RE: Escalation of Complaint

We received a telephone call from Mr. Roger Reeves on 08/14/2006 02:28 PM.

Mr. Reeves submitted the attached EAS Questionnaire to the Birmingham District Office on July 17, 2006. He states he has not been contacted by the Birmingham District Office. The EEOC Contact Center apologized to Mr. Reeves for any inconvenience this may have caused. We informed him that an official at the field office will contact him within 4-6 business days.

To reach Mr. Reeves, please call him at 334-687-7336 at 1:30 PM.

If you need further information or clarification, please request to speak with an EEOC NCC Supervisor either by email at info@ask.eeoc.gov or by calling 1-800-669-4000.

This report contains all the information that the EEOC NCC Contact Center has regarding the customer's concern and contact information.

According to the business rules established by EEOC, action should be taken to deal with the customer's concerns within 4 business days from the date the email is received by your office.

Please reply to this email to notify us what action has been taken to resolve this matter.   Once the reply is received, our tracking system will record the matter as closed.

Response (Aaron McLeland) - 08/14/2006 02:28 PM
We take every charge very seriously.  Bear in mind that EEOC has handled over 72,000 charges per year since 1992, out of our 52 offices, and that was 51 until about a week ago. I apologize for the delay, but please understand that we will handle your situation.

You should be contacted within 4-6 business days.

Customer (Entered by Aaron McLeland) - 08/14/2006 02:28 PM
Charge number: none

Field Office with Jurisdiction: Birmingham

Staff Member Contact:  none

Last date of contact with FO:  none

Date & brief description of message left with FO's phone system: none

Best time to contact: before 2PM, 1:30 PM is a good time

Information given by caller: They haven't contacted me yet.

They've promised the raise and never gave it to me.

Employer Information
Organization Name: ESI
Phone: (800) 239-5720
Address Line 1:600 W. Adams Street
Address Line 2:

City:Dothan
State:AL
Zip Code:36303

Additional Information: Has anyone filed a charge against the EEOC for being slow and foot dragging?

Untitled

Example 1 - CP provides computer consulting services to businesses. The Respondent contracts with CP to produce a computer data base for a flat rate. CP produces the data base at his own place of business, on his own equipment, and delivers the finished product to the Respondent. In these circumstances, CP is an independent contractor.

Example 2 - A staffing firm hires CP and sends her to perform a long- term accounting project for a client. Her contract with the staffing firm states that she is an independent contractor. CP retains the right to work for others, but spends substantially all of her work time performing services for the client, on the client s premises. The client supervises CP, sets her work schedule, provides the necessary equipment and supplies, and specifies how the work is to be accomplished. CP reports the number of hours she has worked to the staffing firm, which pays her and bills the client. In these circumstances, despite the statement in the contract that CP is an independent contractor, she is an employee of both the staffing firm and the client.

*The U.S. Equal Employment Opportunity Commission*

**Questions And Answers About Mediation**

### Q. What is mediation?



A. Mediation is a form of Alternative Dispute Resolution (ADR) that is offered by the U.S. Equal Employment Opportunity Commission (EEOC) as an alternative to the traditional investigative and litigation processes. Mediation is an informal process in which a trained mediator assists the parties to reach a negotiated resolution of a charge of discrimination. The mediator does not decide who is right or wrong and has no authority to impose a settlement on the parties. Instead, the mediator helps the parties to jointly explore and reconcile their differences.

### Q. Does the EEOC require the parties to participate in mediation?

A. No. Participation in EEOC's mediation program is strictly voluntary. If either party declines to participate in mediation, the charge will be processed just like any other charge.

### Q. Who mediates EEOC charges?

A. Only mediators who are experienced and trained in mediation and equal employment opportunity law are assigned to mediate EEOC charges. EEOC has a staff of trained mediators. We also contract with professional external mediators to mediate charges filed with EEOC. All EEOC mediators, whether internal staff or external mediators, are neutral unbiased professionals with no stake in the outcome of the mediation process.

### Q. At what point in the administrative process will mediation take place?

A. Mediation will usually take place early in the process prior to an investigation of the charge. Offering mediation to the parties prior to an investigation saves Commission resources by avoiding the investigation of a charge that might be appropriately resolved through mediation. In addition, mediation prior to an investigation prevents the hardening of positions that can occur during a lengthy investigation.

### Q. Is the mediation process confidential?

A. Yes. The EEOC maintains strict confidentiality in its mediation program. The mediator and the parties must sign agreements that they will keep everything that is revealed during the mediation confidential. The mediation sessions are not tape-recorded or transcribed. Notes taken during the mediation are destroyed. Any records or other documents offered by either party during the mediation are also destroyed. Furthermore, in order to ensure confidentiality, the mediation program is insulated from the EEOC's investigative and litigation functions. EEOC mediators only mediate charges. They are precluded from performing any other functions related to the investigation or litigation of charges.

Gave more overtime to white person and other hours.

Untitled

A mechanic refused to remove a Confederate flag sticker from his toolbox after an African-American co-worker complained that the sticker was offensive. The mechanic's claim of free speech was denied.

(Dixon v. Colourg Dairy Inc., 4th Cir.)

policy, and how to report any concerns he may have. At no time during Charging Party's employment did he make any member of DSI supervision or management aware that he felt that he was experiencing any form of racial or religious discrimination. DSI was not aware of any religious beliefs held by the charging party prior to the receipt this charge. (2)

On several occasions during 2005 and 2006 charging party complained about the wage he was being paid. On each occasion he was told that the wages would only be raised if DSI was able to negotiate such an increase with the customer. Charging Party also approached Mr. John Howard, who is employed by American Buildings and does not have any employer relationship to charging party. Mr. Howard also informed him that the issue was being addressed, but nothing was ever guaranteed. Ironically, at the time the charging party filed the complaint with the EEOC, DSI was close to securing an increase for the officers assigned to this facility. An increase was subsequently agreed to, and on January 1, 2007, all officers assigned to American buildings were given a $.50 wage increase to $6.75. (3)

It must be noted that during relevant times to this charge, both African American and Caucasian employees were working at American Buildings for the same pay.[2] There was no variance in wage according to race, religion, or any other factor. It appears that the charging party's only real evidence of racial or religious discrimination stems form his assumption that his lack of wage increases over the years must be due to some illegal factor, rather than the inherent nature of contract employment where no wage increase is ever guaranteed. (4)

### 2.  Charging Party Cannot Sustain a Charge of Racial or Religious Discrimination

#### a.  Charging Party Does Not Meet the Legal Standard To Bring a Case of Racial Discrimination

As clearly indicated by the undisputed facts of this matter, the charging party has failed to meet the long-established legal criteria for bringing a charge of racial discrimination under Title VII of the Civil Rights Act of 1964. There are simply no facts to support the allegation that the charging party was denied a wage increase due to his race. Charging Party has the ultimate burden to make a prima facie case of discrimination in order to shift the burden to the employer[3], and it is obvious he has no facts that point to this other than his unsupported allegation. As the facts clearly point, he has not been treated any differently because of his race, nor has he suffered any adverse action based on his protected status.

---

[2] See Exhibit #2

[3] *McDonnell Douglas Corp. v. Green,* **411 U.S. 792** (1973)

3



**SECURITY SERVICES**
P.O. BOX 7163 / 600 W. ADAMS ST.
DOTHAN, AL 36302
(334) 793-5720

**Prepared in Anticipation of Litigation**
*Via Federal Express*

February 26, 2007

Mr. Roy L. Jackson
US Equal Employment Opportunity Commission
Birmingham Area Office
1130 22ⁿᵈ Street, Suite 2000
Birmingham, AL 35205

Re: ***Roger Reeves v.  DSI Security Services***
    EEOC Charge No. : 420 2006 03907

Dear Mr. Jackson:

I represent the respondent, Dothan Security Inc, dba DSI Security Services ('DSI" or the "Company") in the above-referenced matter. This letter and the attached documents are submitted in response to the U.S. Equal Employment Opportunity Commission's request for a position statement and supporting documentation.[1] A copy of Roger Reeves' Charge of Discrimination is attached hereto.

## PRELIMINARY STATEMENT

Charging party alleges that he was denied a wage increase due to his race and religion in violation of Title VII of the Civil Rights Act of 1964 ("Title VII").

DSI unqualifiedly denies Charging Party's allegations of discrimination. Charging party has never been subjected to any form of discrimination based on his race, religion, or any other illegal factor. As the facts clearly show, he was paid the exact same wage as all other officers assigned to his location, and he has never been denied a wage increase

---

[1]      This position statement is submitted solely for informational purposes in order to aid in the U.S. Equal Employment Opportunity Commission's investigation and efforts to conciliate the charge. DSI does not authorize the release of this position statement or any documents submitted with this position statement. DSI also reserves the right to submit additional information at any time, which may add to or modify this position statement. In addition, this position statement shall not preclude DSI from subsequently asserting any legal defense or theory in opposition to any allegations in Charging Party's current or subsequent charge.

due to his race or religion. The first notice that the company received of charging party's racial and religious discrimination complaint was the receipt of this charge. Charging party's allegations are wholly without merit and unsupported by any form of evidence. Accordingly Respondent asks the U.S Equal Employment Opportunity Commission to issue a determination that DSI did not violate Title VII.

## STATEMENT OF FACTS

1.    **The Parties**

   a.   **DSI**

DSI is a private, family-owned business that provides comprehensive security services to a range of industries, including commercial, institutional, governmental, and residential clients. The wide array of services that DSI provides includes guard services, access control, security consultants, security systems, and surveillance. DSI is headquartered in Alabama and spans the southeastern United States. DSI's Dothan operation employs approximately 250 employees, and provides service to a wide array of clients. DSI contracts with companies to provide security services and DSI employees are assigned to work at the client's worksite. DSI is a federal contractor and is subject to the stringent Affirmative Action requirements promulgated by the United States. DSI has an ongoing program that includes goals for the hiring of minorities. DSI's corporate office monitors compliance with this program on a continual basis. A large percentage of DSI's Alabama workforce is made up of racial minorities.

All officer pay rates are determined by contract. Therefore, DSI employees are paid by position, and wages are not based on the individual. For example, if DSI contracts to provide security service to ABC Company, a wage will be determined based on the current labor market and client needs. The company then calculates a billing rate based on this wage. Therefore, each officer assigned to that post is paid the same wage. The only occasion where this pay is raised, is when the customer agrees to a billing adjustment. In the present case, DSI was unable to negotiate any type of pay increase until December 2006. At all relevant times to this charge DSI was only obligated to pay the charging party no more than the prevailing federal minimum wage.

*[handwritten: We want only Be court to EEOC]*

*[handwritten: (2)]*

*[handwritten: False Wage!!! How it could pay more when started]*

   b.   **Charging Party**

Charging Party was hired as a security officer on February 27, 2002. He was assigned to work a security officer post at American Buildings in Eufaula, Al at a rate of $6.25 per hour. After charging party was hired, he was asked to participate in DSI's standard orientation process which includes a detailed explanation of the rules and regulations that all officers are expected to follow. The Charging Party participated in this session and received training and information on the company's strict anti-discrimination

2