1:07-CV-00616-SRW REEVES V DSI SECURITY SERVICES et al

[Stamped: 2007 DEC 21 A 3:09 DEBRA P. HACKETT, U.S. DISTRICT COURT, MIDDLE DISTRICT ALA]

[Stamped (crossed out): 2007 DEC 11 A 9:31 DEBRA P. HACKETT, U.S. DISTRICT COURT, MIDDLE DISTRICT ALA]

## Memorandum in Support of Plaintiff Motion To Reconsider Order Staying Discovery.

Defendant EEOC claims that the Court lacks jurisdiction. EEOC matters can be adjudicated by the District Court. The EEOC is subject to Sanctions and Attorney fees per Document enclosed. This more than states a claim which relief can be granted.

EEOC employees also are subject to standards of Ethical Conduct for Employees (see Attachment).

Also a case showing sanctions against EEOC for failing to Conciliate in good Faith Document shows EEOC Employees are subject to law as other citizens are.

Penalties can be accessed against government employees breaking the law as per Document as well as other remedies available by law.

It is the attorney right to have access to copies of all material pertinent to his case. Rule 26 allows for complete and open discoveries. If any parts is privilege the party shall make claim expressly and shall describe the nature of the documents, communications or things not produced or disclosed in a manner that .... will enable other parties to assess the applicability of the privilege or protection.

Because of these above stated facts I am requesting that all material be submitted with due speed.

12/20/07                    Roger Reeves

Certificate of Service

I hereby Certify on Dec. 13, 2007 I filed with the Clerk of the Court and a Copy of this Document was mailed to

Danielle J. HAYOT
US Equal Employment Opportunity Commission
Office of Legal Counsel
1801 L Street N.W.
Washington, D.C. 20507

12/20/07 Roger Reeves

12/20/07 Roger Reeves

Case 2:07-cv-00616-MHT-SRW    Document 60-2    Filed 12/21/2007    Page 11 of 19

*The U.S. Equal Employment Opportunity Commission*

# F. NOTIFICATION REGARDING SANCTIONS OR FEES AGAINST EEOC

## 1. Opposing Counsel's Intent to Seek Sanctions or Fees Against EEOC

The Regional Attorney must immediately notify the Sanctions Officer of the Office of General Counsel (OGC) if it receives a written communication (including by electronic mail) from opposing counsel indicating an intent to move for contempt, or to seek sanctions, expenses, or attorney's fees against the Commission or its attorneys under Rule 11, Fed. R. Civ. P., or other authority such as Fed. R. Civ. P. 26(g), 28 U.S.C. § 1927, or the court's inherent powers. OGC's Sanctions Officer is the Associate General Counsel, Litigation Management Services (LMS). The Regional Attorneys must first notify the OGC Sanctions Officer by telephone or e-mail and must then fax or e-mail the communication to the Sanctions Officer. Notice to the Sanctions Officer is not required for written communications indicating an intent to seek sanctions or expenses under Rule 37, Fed. R. Civ. P.

## 2. Opposing Counsel's Motion for Sanctions or Fees Against EEOC

The Regional Attorney must notify the OGC Sanctions Officer if opposing counsel files a motion for contempt, for sanctions, expenses, or attorney's fees under Fed. R. Civ. P. 11 or 26(g), 28 U.S.C.§ 1927, or other authority, or for attorney's fees under 42 U.S.C.§ 2000e-5(k) or the Equal Access to Justice Act. Notice to the Sanctions Officer is not required of motions for sanctions or expenses against EEOC under Fed. R. Civ. P. 37., but the office's LMS liaison attorney should be notified of motions seeking sanctions under Rule 37(b)(2), (c), or (d).

## 3. Court's Finding of Contempt or Sanctions Against EEOC and Awards of Attorney's Fees

When the court finds EEOC or one of its attorney's in contempt, sanctions EEOC or an attorney, or awards attorney's fees against the Commission or an attorney, the Regional Attorney must notify the OGC Sanctions Officer immediately by telephone or e-mail, and fax or e-mail a copy of the court order.

The Department of the Treasury is the federal agency responsible for paying attorney's fees and expenses assessed against the EEOC. Section I.G. of this Part of the *Manual, Requesting Payment of Fees, Costs, and Sanctions Assessed Against EEOC*, explains the process.

*This page was last modified on May 18, 2005.*

Return to Home Page

*[handwritten: Equal Credit Opp...]*

Untitled

practice, but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office. For purposes of sections 1404 and 1406 of title 28, the judicial district in which the respondent has his principal office shall in all cases be considered a district in which the action might have been brought.

g) Injunctions; appropriate affirmative action; equitable relief; accrual of back pay; reduction of back pay; limitations on judicial orders
(1) If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay (payable by the employer, employment agency, or labor organization, as the case may be, responsible for the unlawful employment practice), or any other equitable relief as the court deems appropriate. Back pay liability shall not accrue from a date more than two years prior to the filing of a charge with the Commission. Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable.

(k) Attorney's fee; liability of Commission and United States for costs
In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person.

Untitled

Title 5: Administrative Personnel
PART 2635—STANDARDS OF ETHICAL CONDUCT FOR EMPLOYEES OF THE EXECUTIVE BRANCH
Subpart A—General Provisions

Browse Previous | Browse Next

§ 2635.106   Disciplinary and corrective action.
(a) Except as provided in §2635.107, a violation of this part or of supplemental agency regulations may be cause for appropriate corrective or disciplinary action to be taken under applicable Governmentwide regulations or agency procedures. Such action may be in addition to any action or penalty prescribed by law.

(b) It is the responsibility of the employing agency to initiate appropriate disciplinary or corrective action in individual cases. However, corrective action may be ordered or disciplinary action recommended by the Director of the Office of Government Ethics under the procedures at part 2638 of this chapter.

(c) A violation of this part or of supplemental agency regulations, as such, does not create any right or benefit, substantive or procedural, enforceable at law by any person against the United States, its agencies, its officers or employees, or any other person. Thus, for example, an individual who alleges that an employee has failed to adhere to laws and regulations that provide equal opportunity regardless of race, color, religion, sex, national origin, age, or handicap is required to follow applicable statutory and regulatory procedures, including those of the Equal Employment Opportunity Commission.

Title 5: Administrative Personnel
PART 2635—STANDARDS OF ETHICAL CONDUCT FOR EMPLOYEES OF THE EXECUTIVE BRANCH
Subpart I—Related Statutory Authorities

Browse Previous

§ 2635.902   Related statutes.
(a) The prohibition against solicitation or receipt of bribes (18 U.S.C. 201(b)).

(b) The prohibition against solicitation or receipt of illegal gratuities (18 U.S.C. 201(c)).

(c) The prohibition against seeking or receiving compensation for certain representational services before the Government (18 U.S.C. 203).

(d) The prohibition against assisting in the prosecution of claims against the Government or acting as agent or attorney before the Government (18 U.S.C. 205).

(e) The post-employment restrictions applicable to former employees (18 U.S.C. 207, with implementing regulations at parts 2637 and 2641 of this chapter).

(f) The prohibition on certain former agency officials' acceptance of compensation from a contractor (41 U.S.C. 423(d)).

(g) The prohibition against participating in matters affecting an employee's own financial interests or the financial interests of other specified persons or organizations (18 U.S.C. 208).

(h) The actions required of certain agency officials when they contact, or are contacted by, offerors or bidders regarding non-Federal employment (41 U.S.C. 423(c)).

(i) The prohibition against receiving salary or any contribution to or

Untitled

supplementation of salary as compensation for Government service from a source other than the United States (18 U.S.C. 209).

(j) The prohibition against gifts to superiors (5 U.S.C. 7351).

(k) The prohibition against solicitation or receipt of gifts from specified prohibited sources (5 U.S.C. 7353).

(l) The prohibition against fraudulent access and related activity in connection with computers (18 U.S.C. 1030).

(m) The provisions governing receipt and disposition of foreign gifts and decorations (5 U.S.C. 7342).

(n) [Reserved]

(o) The prohibitions against certain political activities (5 U.S.C. 7321 through 7326 and 18 U.S.C. 602, 603, 606 and 607).

(p) The prohibitions against disloyalty and striking (5 U.S.C. 7311 and 18 U.S.C. 1918).

(q) The general prohibition (18 U.S.C. 219) against acting as the agent of a foreign principal required to register under the Foreign Agents Registration Act (22 U.S.C. 611 through 621).

(r) The prohibition against employment of a person convicted of participating in or promoting a riot or civil disorder (5 U.S.C. 7313).

(s) The prohibition against employment of an individual who habitually uses intoxicating beverages to excess (5 U.S.C. 7352).

(t) The prohibition against misuse of a Government vehicle (31 U.S.C. 1344).

(u) The prohibition against misuse of the franking privilege (18 U.S.C. 1719).

(v) The prohibition against fraud or false statements in a Government matter (18 U.S.C. 1001).

(w) The prohibition against concealing, mutilating or destroying a public record (18 U.S.C. 2071).

(x) The prohibition against counterfeiting or forging transportation requests (18 U.S.C. 508).

(y) The restrictions on disclosure of certain sensitive Government information under the Freedom of Information Act and the Privacy Act (5 U.S.C. 552 and 552a).

(z) The prohibitions against disclosure of classified information (18 U.S.C. 798 and 50 U.S.C. 783(a)).

(aa) The prohibition against disclosure of proprietary information and certain other information of a confidential nature (18 U.S.C. 1905).

(bb) The prohibitions on disclosing and obtaining certain procurement information (41 U.S.C. 423(a) and (b)).

(cc) The prohibition against unauthorized use of documents relating to claims from or by the Government (18 U.S.C. 285).

(dd) The prohibition against certain personnel practices (5 U.S.C. 2302).

(ee) The prohibition against interference with civil service examinations (18 U.S.C.

Untitled

1917).

(ff) The restrictions on use of public funds for lobbying (18 U.S.C. 1913).

(gg) The prohibition against participation in the appointment or promotion of relatives (5 U.S.C. 3110).

(hh) The prohibition against solicitation or acceptance of anything of value to obtain public office for another (18 U.S.C. 211).

(ii) The prohibition against conspiracy to commit an offense against or to defraud the United States (18 U.S.C. 371).

(jj) The prohibition against embezzlement or conversion of Government money or property (18 U.S.C. 641).

(kk) The prohibition against failing to account for public money (18 U.S.C. 643).

(ll) The prohibition against embezzlement of the money or property of another person that is in the possession of an employee by reason of his employment (18 U.S.C. 654).

[57 FR 35042, Aug. 7, 1992, as amended at 62 FR 48748, Sept. 17, 1997; 64 FR 2422, Jan. 14, 1999; 65 FR 69657, Nov. 20, 2000]

Browse Previous



## Appeals Court Sanctions EEOC for Failing to Conciliate in Good Faith Before Filing Lawsuit

February 11, 2004

Emphasizing the legal duty to attempt conciliation between complainants and employers, a federal appeals court upheld the dismissal of a lawsuit filed by the Equal Employment Opportunity Commission and the award of attorneys' fees and costs to the defendant employer. Under the circumstances of the case, the U. S. Court of Appeals for the Eleventh Circuit said the EEOC's conduct " 'smacks more of coercion than of conciliation'."

The case involved allegations of racial harassment, disparate pay, and retaliation filed by an employee of a tree service company working under contract to a Florida regional utility agency. An employee of the utility agency allegedly made racial jokes and gestures while observing and inspecting the work of the tree service employee and his crew. The company addressed the employee's complaint, and according to the employee, the harassment stopped. Subsequently, the contract work dwindled, and the entire work crew was eventually laid off as a result.

Alleging unlawful harassment, discrimination in pay, and retaliation, the employee filed a complaint with the EEOC. During the ensuing thirty-two month investigation, the EEOC focused on the disparate pay claim. The company cooperated with the investigation, however, the EEOC subsequently issued a "reasonable cause" finding on the harassment and retaliation claims but not on the pay claim.

One week after the issuing the cause finding, the EEOC sent a proposed "conciliation agreement" to the company's general counsel, requesting a response within 13 business days. The agreement included reinstatement and front pay for the employee, as well as notice to its employees nationwide of the allegations and training nationwide for all management and hourly employees within 90 days. Although the company immediately retained legal counsel in Florida to investigate the incident and the allegations, and although it responded to the proposal within five days of the stated response date, the EEOC interpreted the response as a refusal to conciliate and filed suit on behalf of the employee. The company's response had requested an explanation of the EEOC's basis for the cause finding, which was not provided, and asked for an extension of time in which to complete the internal investigation and to discuss the issues with the EEOC investigator. It had not indicated any attitude of unwillingness to conciliate.

The federal district court dismissed the EEOC's case against the employer, and as a sanction for the

commission's failure to meet its statutory duty to conciliate, awarded the employer attorney's fees and costs. On appeal, that action was upheld by the U. S. Court of Appeals for the Eleventh Circuit. The appeals court agreed the EEOC had acted in a "grossly arbitrary manner" and "engaged in unreasonable conduct in failing to fulfill its statutory requirement to conciliate the matter."

Under Title VII of the Civil Rights Act of 1964, before filing a lawsuit, the EEOC must "endeavor to eliminate any such alleged unlawful employment practices by informal methods of conference, conciliation and persuasion." To that end, the law requires the EEOC to "(1) outline to the employer the reasonable cause for its belief that Title VII has been violated; (2) offer an opportunity for voluntary compliance; and (3) respond in a reasonable and flexible manner to the reasonable attitudes of the employer." In determining whether the EEOC has complied, "the fundamental question is the reasonableness and responsiveness of the EEOC's conduct under all the circumstances," the court explained.

In support of its decision that the EEOC failed in its conciliation duty and deserved sanctions, the court noted a laundry list of actions and omissions:

1. A three-year investigation of allegations of misconduct by a non-employee, culminating in a cause finding with no explanation as to the basis upon which the employer could be liable for the misconduct;
2. The issuance of a cause finding followed one week later by a proposed conciliation agreement that would have required the employer to reinstatement the former employee with front pay to a position that no longer existed and to conduct nationwide training for all employees within a 90-day period;
3. The refusal of the EEOC investigator to acknowledge receipt of the company's request for an extended period in which to conduct its own investigation of the allegations underlying the cause finding and to discuss the issues with the commission;
4. The failure to communicate with the local attorney for the company and instead immediately to notify the general counsel that conciliation was terminated and a lawsuit imminent. In the court's words, "such an 'all or nothing approach' on the part of a government agency. one of whose most essential functions is to attempt conciliation with the private party, will not do."

Specifically, the court rejected the EEOC's contention that it had no legal duty to respond to the employer's attorney's letter. The mandated "reasonable effort" to resolve the issues between the parties "must, at a minimum, make clear to the employer the basis for the EEOC's charges against it. Otherwise, it cannot be said that the Commission has provided a meaningful conciliation opportunity." Furthermore, the court found no reasonable explanation as to why the Commission had not been willing to keep open the opportunity to negotiate with the employer or to reopen discussions after learning of the company's engagement of local counsel specifically to resolve the matter.

"Conciliation is at the heart of Title VII," noted the court. Speculating the Commission may have been motivated to file the lawsuit hastily because of its potentially lurid details (allegations of a noose as part of one of the offending jokes), which had been reported in the national press, the court said the EEOC failed to engage in the required good faith efforts "to achieve conciliation, effect voluntary compliance, and to reserve judicial action as a last resort." As such, sanctions of the kind imposed by the trial court were not an unreasonable remedy or abuse of judicial discretion.

The full decision is posted on the website for the U. S. Court of Appeals for the Eleventh Circuit.

---

**For More Information Contact:**

**David E. Block**
Partner
Miami Office
2 South Biscayne Blvd.
Suite 3500
Miami, FL 33131
Email: BlockD@jacksonlewis.com
Phone: (305) 577-7600
Fax: (305) 373-4466

This article is provided for informational purposes only. It is not intended as legal advice nor does it create an attorney/client relationship between Jackson Lewis LLP and any readers or recipients. Readers should consult counsel of their own choosing to discuss how these matters relate to their individual circumstances. Reproduction in whole or in part is prohibited without the express written consent of Jackson Lewis LLP. Jackson Lewis LLP represents management exclusively in workplace law and related litigation. Our attorneys are available to assist employers in their compliance efforts and to represent employers in matters before state and federal courts and administrative agencies. For more information, please contact the attorney(s) listed above or the Jackson Lewis attorney with whom you regularly work.

**Article Website Address:**
http://www.jacksonlewis.com/legalupdates/article.cfm?aid=532

Untitled

White-Collar Crime: an overview

The phrase "white-collar crime" was coined in 1939 during a speech given by Edwin Sutherland to the American Sociological Society. Sutherland defined the term as "crime committed by a person of respectability and high social status in the course of his occupation." Although there has been some debate as to what qualifies as a white-collar crime, the term today generally encompasses a variety of nonviolent crimes usually committed in commercial situations for financial gain. Many white-collar crimes are especially difficult to prosecute because the perpetrators are sophisticated criminals who have attempted to conceal their activities through a series of complex transactions.

The most common white-collar offenses include: antitrust violations, computer and internet fraud, credit card fraud, phone and telemarketing fraud, bankruptcy fraud, healthcare fraud, environmental law violations, insurance fraud, mail fraud, government fraud, tax evasion, financial fraud, securities fraud, insider trading, bribery, kickbacks, counterfeiting, public corruption, money laundering, embezzlement, economic espionage and trade secret theft. According to the federal bureau of investigation, white-collar crime is estimated to cost the United States more than $300 billion annually.

Although white-collar criminal charges are usually brought against individuals, corporations may also be subject to sanctions for these types of offenses. The penalties for white-collar offenses include fines, home detention, community confinement, costs of prosecution, forfeitures, restitution, supervised release, and imprisonment. However, sanctions can be lessened if the defendant takes responsibility for the crime and assists the authorities in their investigation. Any defenses available to non-white-collar defendants in criminal court are also available to those accused of white-collar crimes. A common refrain of individuals or organizations facing white-collar criminal charges is the defense of entrapment. For instance, in United States v. Williams, 705 F.2d 603 (2nd Cir. 1983), one of the cases arising from "Operation Abscam (http://en.wikipedia.org/wiki/Abscam)," Senator Harrison Williams attempted unsuccessfully to argue that the government induced him into accepting a bribe.

§ 216. Penalties and injunctions    *TITLE 18*

How Current is This? (a) The punishment for an offense under section 203, 204, 205, 207, 208, or 209 of this title is the following:
(1) Whoever engages in the conduct constituting the offense shall be imprisoned for not more than one year or fined in the amount set forth in this title, or both.
(2) Whoever willfully engages in the conduct constituting the offense shall be imprisoned for not more than five years or fined in the amount set forth in this title, or both.
(b) The Attorney General may bring a civil action in the appropriate United States district court against any person who engages in conduct constituting an offense under section 203, 204, 205, 207, 208, or 209 of this title and, upon proof of such conduct by a preponderance of the evidence, such person shall be subject to a civil penalty of not more than $50,000 for each violation or the amount of compensation which the person received or offered for the prohibited conduct, whichever amount is greater. The imposition of a civil penalty under this subsection does not preclude any other criminal or civil statutory, common law, or administrative remedy, which is available by law to the United States or any other person.
(c) If the Attorney General has reason to believe that a person is engaging in conduct constituting an offense under section 203, 204, 205, 207, 208, or 209 of this title, the Attorney General may petition an appropriate United States district court for an order prohibiting that person from engaging in such conduct. The court may issue an order prohibiting that person from engaging in such conduct if the court finds that the conduct constitutes such an offense. The filing of a petition under this section does not preclude any other remedy which is available by law to the United States or any other person.