CASE: 1:07-CV-00616-MHT-SRW

Roger Reeves,
   Plaintiff

V.

DSI Security Services, et. al.,
   Defendants

RECEIVED

2008 MAR 20 A 9:35

DEBRA P. HACKETT CLK
US DISTRICT COURT
MIDDLE DISTRICT ALA

Answer To Recommendation of

The Magistrate Judge (Document # 83-1)

Being proper for the Court to believe the evidence of the non-movant and all justifiable inferences are to be drawn in his favor I wish to enumerate why this Summary Judgement for the Defendant DSI should be overturned. It has not being shown that all DSI Security Guards were making the same wage and all other compensations were the same. DSI has stated that for all "relevant time" the wage were the same. Their answer to "relevant time" has been 180 day prior to my filing of a Charge. The white employee was only on board for 2 month prior to ADR mediation where Document was produced. All DSI guard up to that time only had about 2 yrs to my 5 years of service.

They were not Similary in the Same position. They were not told it was a three yrs Contract. They were not told they were Negociating One or was expecting a raise. The only people Similary sisuated were the plant Worker who were expecting raises at a certain time. DSI only provided a raise when force to do so because of Case with EEOC. Because of my Race and previous Slanted discriminisatory actions DSI did not give Along with American Building the raise promised to me several times Some of the discriminisatory actions includes:

(1) Giving preference in initial hiring by giving less Quactified person 40 hours and plaintiff 20 hoursa week. A copy of minoture B.S. Degree is attached.

(2) CONSistenly gave more overtime Hour to white Person even when he did not want to Work.

(3) Got Rid of Previous Black employee who had same Religion.

(4) During all period of time would not change Schedule to allow me to go to Church on Wednesday. When white person came on Board his schedule was modified to allow him to go to Church on Wednesday.

(5) IN Document submitted to EEOC told many lies. (SEE Documentaion 1)

An inference can be drawn that if they would lie about these matter (Religion, Raises) only a negative inference can be drawn. In absent of any other factors One would ask what is the difference and why would they do these actions. Race and religion are the difference and they (DSI) has showed a Slanted view toward both in respect to Plaintiff. I think this would influence their decision to give a raise.

Plaintiff has tried to get in Discovery information about other Employee Compensations. I was only allowed to get information for last 6 month before filing Charge which is inadequate. DSI has refuse to answer questions and has been very deceptive in their answers.

"DSI has not produced any reason for not giving raise Promised." A prima facie has been established

    (1) member of Protected Class
    (2) subject to adverse employment action
    (3) Similar employees treated different (religion, Hours)
    (4) Inference of discrimination

However Where there is not a person in the same exact situation then the "but for" test is used by the Courts. The test is would not the party alleging

to have been subjected to racial discrimination under the Race Relations ACT not have been treated so but for the racial difference. A person not of the protect class would have not been subject to this type of experience. Again some of these are:

(1) Promise Raise
(2) Continue Promise when no negotiations were taken Place
(3) No raise in more than 4 YRS.
(4) Said signing paper work (NONE Sign)
(5) No hint Paperwork ever existed
(6) Caught lying about Negotiating and lying in SWORN Court documents about religion and other things

DSI is expecting us to believe that they did not have enough money to give a raise and that they never receive enough to give one in four years, and when paperwork was submitted to give one NONE was forthcoming. Companies (DSI and American) was signing paperwork but change their mind about signing it. They could tell me three years of lies and still be true to their words. IN GoLazZaw. V. United States Postal Service (DOC 2) this situation was adjudicated in favor of Plaintiff (DOC. 3) The same should be done in this case.

Because of DSI action in EEOC ADR

Mediation my civil rights which I came to get enforced were violated. Because of their prejudicial action

1. Jumping up and leaving the room with Defendant
2. Making Prejudice Statement "This Act does not know what he is doing." What you said does not make any sense at all".
3. Not following Normal ADR Procedures

I was not allowed "a meaingful conciliation opportunity" (Document 4; No. 5). Also because of their action (DSI and EEOC) the ADR Process for my case was prejudice and no offer came forth. A mock second ADR Process was attempted but they know they did not have to make a offer so no bona-fide offer came forth. (SEE DOC. 4). These action show guilt and that they had something to hide. Only a Negative inference can be drawn. Plaintiff Plan to provide from Discovery information showing white employee given more hours and other white person allowed to work ON Wed. and plaintiff was not allowed.

A document(s) has been provide to show that Plaintiff works the second shift on Fridays so he can go to Church. A sign statement from the person I exchange hours with is also provided with DSI approval. DSI said they did not know I had any religious preference. I think Summary Judgement should be awarded on these facts alone.

Evidence from the Plaintiff was not allowed.

The defendant was allowed to present Evidence and rebuttal to Plaintiff but Plaintiff was not allowed to present his evidential Summation. When Defendant left the room with the A.D.R. Mediator he show that he had discriminatory intent. Lying in EEOC Document shows discriminatory intent. He showed that he had Something to hide or he would not have done these acts. See Document (5)   I was deprived of my civil rights

The Plaintiff has shown he was treated differently in hours assign and time off for religious activites (church). This show that plaintiff was treated dispartly.

Plaintiff only has to show an interence of discriminatory action or the "but for" test could be use where there is not a similar situated employee. Using these two instances the Plaintiff would be granted Summary Judgement not the Defendant.

Document 2 Shows that it a person is caught cheating that it can be inferred that their cause is an unrighteous one and their conduct is evidence of their guilt ( Missouri v. Robert Joe Mason 394 S.W. 2d 343).

DSI Lawyer and representative left the room with malice and forethough and consciously made the decision to cheat and break the rules. These action should not be rewarded but condemn and Default Judgement given to Plaintiff.

EEOC was sanctioned for not failing to Conciliate in good faith. DSI should not be rewarded for failing to Conciliate in good faith

DSI consciously committed or cause an employment Action when they made the decision to provide a work environment "free of the EEOC". My civil rights very taken away in the work Environment. They committed this employment action a second time also. Document included shows signature of Paul Forehand a former employee who was here when DSI made statements.

Magistrate seem to be looking at Case with tainted glasses. I think Case should not be transfered back to Magistrate Judge. All of the facts should be looked at not one isolated piece of evidence (2 weeks payroll).

I think that if motion was filed wrong that the Court should have informed me early and not wait until the Judge Recommendation that the motion was filed wrong being a Pro Se Lawyer.

Roger Reeves

3/19/08

Certificate of Service

I hereby certify that on 3/19/08 a copy of the foregoing was served on the Court.

Roger Reeves
B-12 Chatt. Court
Eufaula, Ala. 36027



**DWYSYWD**

SECURITY
SERVICES

# EMPLOYEE SIGN-IN SHEETS

Week Ending*:_____          Client Location:_____
Page ____ of ____ Sheets.

| DATE | NAME (Print) | SIGNATURE | TIME** IN | OUT | TOTAL HRS. | SUPERVISOR |
|------|-------------|-----------|-----------|-----|------------|------------|
| 13-13-08 | Emma Lawrence | Emma Lawrence | 2400 | 0600 | 6 | |
| 23-13-08 | Roger Reeves | Roger Reeves | 1400 | 2200 | 8 | |
| 3-13-08 | Sheranda Laseter | Sheranda Laseter | 2200 | 2400 | 2 | |
| 43-14-08 | Sheranda Laseter | Sheranda Laseter | 0000 | 0600 | 6 | |
| 53-14-08 | Tiffinea Flowers | Tiffinea Flowers | 1400 | 2200 | 8 | |
| 63-14-08 | Roger Reeves | Roger Reeves | 2200 | 2400 | 2 | |
| 73-15-08 | Roger Reeves | Roger Reeves | 0000 | 0600 | 6 | |
| 8 | | | | | | |
| 9 | | | | | | |
| 10 | | | | | | |
| 11 | | | | | | |
| 12 | | | | | | |
| 13 | | | | | | |
| 14 | | | | | | |
| 15 | | | | | | |
| 16 | | | | | | |
| 17 | | | | | | |
| 18 | | | | | | |
| 19 | | | | | | |
| 20 | | | | | | |
| 21 | | | | | | |
| 22 | | | | | | |
| 23 | | | | | | |
| 24 | | | | | | |
| 25 | | | | | | |
| 26 | | | | | | |
| 27 | | | | | | |
| 28 | | | | | | |

*ALWAYS A WEDNESDAY
**USE MILITARY TIME ONLY

**TOTAL HOURS**



# EMPLOYEE SIGN-IN SHEETS

Week Ending*:_____          Client Location:_____

Page _____ of _____ Sheets.

| DATE | NAME (Print) | SIGNATURE | TIME** IN | TIME** OUT | TOTAL HRS. | SUPERVISOR |
|------|------|------|------|------|------|------|
| 1 2-28-08 | Emma Lawrence | Emma Lawrence | 2400 | 0600 | 6 | |
| 2 2-28-08 | Roger Reeves | Roger Reeves | 1400 | 2200 | 8 | |
| 3 2-28-08 | Sheranda Laseter | Sheranda Laseter | 2200 | 2400 | 2 | |
| 4 2-29-08 | Sheranda Laseter | Sheranda Laseter | 0000 | 0600 | 6 | |
| 5 2-29-08 | Roger Reeves | Roger Reeves | 1400 | 2400 | 10 | |
| 6 3-1-08 | Roger Reeves | Roger Reeves | 0000 | 0600 | 6 | |
| 7 3-1-08 | Tiffinea Flowers | Tiffinea Flowers | 0600 | 1800 | 12 | |
| 8 3-1-08 | Sheranda Laseter | Sheranda Laseter | 1800 | 2400 | 6 | |
| 9 3-2-08 | Sheranda Laseter | Sheranda Laseter | 0000 | 0600 | 6 | |
| 10 3-2-08 | Tiffinea Flowers | Tiffinea Flowers | 0600 | 1800 | 12 | |
| 11 3-2-08 | Sheranda Laseter | Sheranda Laseter | 1800 | 2400 | 6 | |
| 12 3-3-08 | Sheranda Laseter | Sheranda Laseter | 0000 | 0600 | 6 | |
| 13 3-3-08 | Roger Reeves | Roger Reeves | 1400 | 2200 | 8 | |
| 14 3-3-08 | Emma Lawrence | Emma Lawrence | 2200 | 0600 | 8 | |
| 15 | | | | | | |
| 16 | | | | | | |
| 17 | | | | | | |
| 18 | | | | | | |
| 19 | | | | | | |
| 20 | | | | | | |
| 21 | | | | | | |
| 22 | | | | | | |
| 23 | | | | | | |
| 24 | | | | | | |
| 25 | | | | | | |
| 26 | | | | | | |
| 27 | | | | | | |
| 28 | | | | | | |

*ALWAYS A WEDNESDAY
**USE MILITARY TIME ONLY

TOTAL HOURS

Document 2

Untitled

overturning a judgement. The court in Sutter v. Easterly (Mo) 189 SW2d 284, articulated the general rule defining fraud on the court within the courts of Missouri:

"... Where a lawyer engages in a conspiracy to commit a fraud upon the court by the production of fabricated evidence and by such means obtains a judgement then the enforcement of the judgement becomes manifestly unconscionable' and a court of equity may devitalize the judgement." Id, at 288.

In State of Missouri, v. Robert Joe Mason, 394 S.W.2d 343, and many other similar cases, it is accepted that if a party is caught cheating, that it can be inferred that their cause is an unrighteous one and that their conduct is evidence of their guilt.

equitable estoppel
: an estoppel that prevents a person from adopting a new position that contradicts a previous position maintained by words, silence, or actions when allowing the new position to be adopted would unfairly harm another person who has relied on the previous position to his or her loss called also estoppel in pais
NOTE: Traditionally equitable estoppel required that the original position was a misrepresentation which was being denied in the new position. Some jurisdictions retain the requirement of misrepresentation.

promissory estoppel
: an estoppel that prevents a promisor from denying the existence of a promise when the promisee reasonably and foreseeably relies on the promise and to his or her loss acts or fails to act and suffers an injustice that can only be avoided by enforcement of the promise

Page 1

DOCUMENT (3)

eeoc

The DIGEST Of Equal Employment Opportunity Law
Volume XIII, No. 3

Office of Federal Operations

Summer Quarter 2002

Discrimination Found. Complainant was discriminated against, based on national origin (Arab/Egyptian), and religion (Muslim), when he was not selected for two agency positions. The Commission also awarded complainant $75,000 in non-pecuniary damages and reimbursement for proven medical expense. Ghazzawi v. United States Postal Service EEOC Appeal No. 01A15327 (April 23, 2002).

Pretext
Pretext Found. The Commission found that the agency's reason for not promoting complainant during his detail as a Garbage Truck Driver (a delay in paperwork and a lack of agency funds), was unworthy of belief. The agency official in charge of processing the paperwork averred that he was processing the necessary paperwork and that complainant could be paid at the higher rate. However, the agency was unable to prove that it even began processing the paperwork. Further, complainant's immediate supervisors obstructed his being paid at the higher rate. The Commission found, accordingly, that the agency discriminated against complainant based on race, color, and retaliation. Ford v. Department of the Army, EEOC Request No. 05980506 (December

. When the Commission orders an award of Back Pay, what does it mean?

Back Pay is an equitable remedy that includes monetary benefits and all forms of compensation, reflecting fluctuations in working time, overtime, rates, penalty overtime, Sunday premium and night work, changing rates of pay, transfers, promotions, and privileges of employment. See Cass v. Department of Veterans Affairs, EEOC Petition No. 04A10014 (March 14, 2002).

2. What is meant by an equitable remedy?

An equitable remedy is "make whole relief" designed to restore the complainant as much as possible to the position he/she would have been in absent discrimination. See Finlay v. United States Postal Service, EEOC Appeal No. 01942985 (April 29, 1997) (citing Albemarle Paper Co. v. Moody, 422 U.S. 405 (1975)).The burden of limiting the remedy rests on the agency. Finlay supra.

3. Where does the Commission get its authority to award back pay?

EEOC's authority to award back pay is derived from the remedial provisions of Title VII of the Civil Rights Act of 1964, as amended, and, by analogy, the Rehabilitation Act of 1973, as amended. See Ferguson v. United States Postal Service, EEOC Request No. 05880848 (May 8, 1990).

6. What are liquidated damages?



DOCUMENT (4)

# Appeals Court Sanctions EEOC for Failing to Conciliate in Good Faith Before Filing Lawsuit

February 11, 2004

Emphasizing the legal duty to attempt conciliation between complainants and employers, a federal appeals court upheld the dismissal of a lawsuit filed by the Equal Employment Opportunity Commission and the award of attorneys' fees and costs to the defendant employer. Under the circumstances of the case, the U. S. Court of Appeals for the Eleventh Circuit said the EEOC's conduct " 'smacks more of coercion than of conciliation'."

The case involved allegations of racial harassment, disparate pay, and retaliation filed by an employee of a tree service company working under contract to a Florida regional utility agency. An employee of the utility agency allegedly made racial jokes and gestures while observing and inspecting the work of the tree service employee and his crew. The company addressed the employee's complaint, and according to the employee, the harassment stopped. Subsequently, the contract work dwindled, and the entire work crew was eventually laid off as a result.

Alleging unlawful harassment, discrimination in pay, and retaliation, the employee filed a complaint with the EEOC. During the ensuing thirty-two month investigation, the EEOC focused on the disparate pay claim. The company cooperated with the investigation, however, the EEOC subsequently issued a "reasonable cause" finding on the harassment and retaliation claims but not on the pay claim.

One week after the issuing the cause finding, the EEOC sent a proposed "conciliation agreement" to the company's general counsel, requesting a response within 13 business days. The agreement included reinstatement and front pay for the employee, as well as notice to its employees nationwide of the allegations and training nationwide for all management and hourly employees within 90 days. Although the company immediately retained legal counsel in Florida to investigate the incident and the allegations, and although it responded to the proposal within five days of the stated response date, the EEOC interpreted the response as a refusal to conciliate and filed suit on behalf of the employee. The company's response had requested an explanation of the EEOC's basis for the cause finding, which was not provided, and asked for an extension of time in which to complete the internal investigation and to discuss the issues with the EEOC investigator. It had not indicated any attitude of unwillingness to conciliate.

The federal district court dismissed the EEOC's case against the employer, and as a sanction for the

commission's failure to meet its statutory duty to conciliate, awarded the employer attorney's fees and costs. On appeal, that action was upheld by the U. S. Court of Appeals for the Eleventh Circuit. The appeals court agreed the EEOC had acted in a "grossly arbitrary manner" and "engaged in unreasonable conduct in failing to fulfill its statutory requirement to conciliate the matter."

Under Title VII of the Civil Rights Act of 1964, before filing a lawsuit, the EEOC must "endeavor to eliminate any such alleged unlawful employment practices by informal methods of conference, conciliation and persuasion." To that end, the law requires the EEOC to "(1) outline to the employer the reasonable cause for its belief that Title VII has been violated; (2) offer an opportunity for voluntary compliance; and (3) respond in a reasonable and flexible manner to the reasonable attitudes of the employer." In determining whether the EEOC has complied, "the fundamental question is the reasonableness and responsiveness of the EEOC's conduct under all the circumstances," the court explained.

In support of its decision that the EEOC failed in its conciliation duty and deserved sanctions, the court noted a laundry list of actions and omissions:

1. A three-year investigation of allegations of misconduct by a non-employee, culminating in a cause finding with no explanation as to the basis upon which the employer could be liable for the misconduct;

2. The issuance of a cause finding followed one week later by a proposed conciliation agreement that would have required the employer to reinstatement the former employee with front pay to a position that no longer existed and to conduct nationwide training for all employees within a 90-day period;

3. The refusal of the EEOC investigator to acknowledge receipt of the company's request for an extended period in which to conduct its own investigation of the allegations underlying the cause finding and to discuss the issues with the commission;

4. The failure to communicate with the local attorney for the company and instead immediately to notify the general counsel that conciliation was terminated and a lawsuit imminent. In the court's words, "such an 'all or nothing approach' on the part of a government agency. one of whose most essential functions is to attempt conciliation with the private party, will not do."

Specifically, the court rejected the EEOC's contention that it had no legal duty to respond to the employer's attorney's letter. The mandated "reasonable effort" to resolve the issues between the parties "must, at a minimum, make clear to the employer the basis for the EEOC's charges against it. Otherwise, it cannot be said that the Commission has provided a meaningful conciliation opportunity." Furthermore, the court found no reasonable explanation as to why the Commission had not been willing to keep open the opportunity to negotiate with the employer or to reopen discussions after learning of the company's engagement of local counsel specifically to resolve the matter.

"Conciliation is at the heart of Title VII," noted the court. Speculating the Commission may have been motivated to file the lawsuit hastily because of its potentially lurid details (allegations of a noose as part of one of the offending jokes), which had been reported in the national press, the court said the EEOC failed to engage in the required good faith efforts "to achieve conciliation, effect voluntary compliance, and to reserve judicial action as a last resort." As such, sanctions of the kind imposed by the trial court were not an unreasonable remedy or abuse of judicial discretion.

The full decision is posted on the website for the U. S. Court of Appeals for the Eleventh Circuit.

**For More Information Contact:**

**David E. Block**
Partner
Miami Office
2 South Biscayne Blvd.
Suite 3500
Miami, FL 33131
Email: BlockD@jacksonlewis.com
Phone: (305) 577-7600
Fax: (305) 373-4466

This article is provided for informational purposes only. It is not intended as legal advice nor does it create an attorney/client relationship between Jackson Lewis LLP and any readers or recipients. Readers should consult counsel of their own choosing to discuss how these matters relate to their individual circumstances. Reproduction in whole or in part is prohibited without the express written consent of Jackson Lewis LLP. Jackson Lewis LLP represents management exclusively in workplace law and related litigation. Our attorneys are available to assist employers in their compliance efforts and to represent employers in matters before state and federal courts and administrative agencies. For more information, please contact the attorney(s) listed above or the Jackson Lewis attorney with whom you regularly work.

**Article Website Address:**
http://www.jacksonlewis.com/legalupdates/article.cfm?aid=532

Untitled

a) "Hostile Environment" Violate s Title VII - The Court rejected the employer's contention that Title VII prohibits only discrimination that causes "economic" or "tangible" injury: "Title VII affords employees the right to work in an environment free from discriminatory intimidation , ridicule, and insult" whether based on sex, race, religion, or national origin. 106 S. Ct. at 2405. Relying on the EEOC's Guidelines' definition of harassment, 6 the Court held that a plaintiff may establish a violation of Title VII "by provi ng that discrimination based on sex has created a hostile or abusive work environment." Id. The Court quoted the Eleventh Circuit's decision in Henson v. City of Dundee, 682 F.2d 897, 902, 29 EPD ¦ 32,993 (11th Cir. 1982):

http://www.eeonews.com/news/race/index.html

## Evidentiary Summation

I am enclosing Document from my FOIA file showing Summation from DSI Counsel show lies that was told.

(1) DSI did not change schedule when I requested it change because I wanted to go to Church on a certain day. Two white were allowed to have their day changed for religious purposes.

(2) DSI said they were negotiating when they were not. It was a one years renewable every year. A raise was only given because of charge file with EEOC. It was not a fair wage. Other post that DSI have have greater rates. Most guard at other DSI post will not come to American Bldgs. because rate is so low. DSI knew I was religious from the beginning when I requested Sunday off for Church.

(3)

DSI said they were negotiating when they knew they were. They told me they were signing a contract in 2006 around Memorial Day but they were lying there also

Mr. Howard stated in April (2006) that I was a fixture and that he would get in the paperwork. At that time he show no inclination that DSI and he was in Negotiation. I was only interested in a raise so I did not challenge DSI. No raise came forth. John Howard told me later that DSI had the paperwork. DSI was telling me daily that they were Negotiating with John Howard. (They were Lying)

(4) They did not have any employee except a retainee with more than one year service so they would not have expected a raise Nor were they given the promise given to me.

(5) They Knew I held a different religious view. There was many conversation about time off for my religion. A White person was given time off but I was not allowed to take Wed. off for Church.

Copy of
Minature
BS. Degree





**SECURITY SERVICES**
P.O. BOX 7163 / 600 W. ADAMS ST.
DOTHAN, AL 36302
(334) 793-5720

**Prepared in Anticipation of Litigation**
*Via Federal Express*

February 26, 2007

Mr. Roy L. Jackson
US Equal Employment Opportunity Commission
Birmingham Area Office
1130 22nd Street, Suite 2000
Birmingham, AL 35205

Re: ***Roger Reeves v.  DSI Security Services***
     EEOC Charge No. : 420 2006 03907

Dear Mr. Jackson:

        I represent the respondent, Dothan Security Inc, dba DSI Security Services ('DSI" or the "Company") in the above-referenced matter. This letter and the attached documents are submitted in response to the U.S. Equal Employment Opportunity Commission's request for a position statement and supporting documentation.[1] A copy of Roger Reeves' Charge of Discrimination is attached hereto.

## PRELIMINARY STATEMENT

        Charging party alleges that he was denied a wage increase due to his race and religion in violation of Title VII of the Civil Rights Act of 1964 ("Title VII").
        DSI unqualifiedly denies Charging Party's allegations of discrimination. Charging party has never been subjected to any form of discrimination based on his race, religion, or any other illegal factor. As the facts clearly show, he was paid the exact same wage as all other officers assigned to his location, and he has never been denied a wage increase

_(1)_

---

[1]        This position statement is submitted solely for informational purposes in order to aid in the U.S. Equal Employment Opportunity Commission's investigation and efforts to conciliate the charge. DSI does not authorize the release of this position statement or any documents submitted with this position statement. DSI also reserves the right to submit additional information at any time, which may add to or modify this position statement. In addition, this position statement shall not preclude DSI from subsequently asserting any legal defense or theory in opposition to any allegations in Charging Party's current or subsequent charge.

due to his race or religion. The first notice that the company received of charging party's racial and religious discrimination complaint was the receipt of this charge. Charging party's allegations are wholly without merit and unsupported by any form of evidence. Accordingly Respondent asks the U.S Equal Employment Opportunity Commission to issue a determination that DSI did not violate Title VII.

## STATEMENT OF FACTS

1. **The Parties**

   a. **DSI**

DSI is a private, family-owned business that provides comprehensive security services to a range of industries, including commercial, institutional, governmental, and residential clients. The wide array of services that DSI provides includes guard services, access control, security consultants, security systems, and surveillance. DSI is headquartered in Alabama and spans the southeastern United States. DSI's Dothan operation employs approximately 250 employees, and provides service to a wide array of clients. DSI contracts with companies to provide security services and DSI employees are assigned to work at the client's worksite. DSI is a federal contractor and is subject to the stringent Affirmative Action requirements promulgated by the United States. DSI has an ongoing program that includes goals for the hiring of minorities. DSI's corporate office monitors compliance with this program on a continual basis. A large percentage of DSI's Alabama workforce is made up of racial minorities.

All officer pay rates are determined by contract. Therefore, DSI employees are paid by position, and wages are not based on the individual. For example, if DSI contracts to provide security service to ABC Company, a wage will be determined based on the current labor market and client needs. The company then calculates a billing rate based on this wage. Therefore, each officer assigned to that post is paid the same wage. The only occasion where this pay is raised, is when the customer agrees to a billing adjustment. In the present case, DSI was unable to negotiate any type of pay increase until December 2006. At all relevant times to this charge DSI was only obligated to pay the charging party no more than the prevailing federal minimum wage.

*[handwritten margin note, left side: We went only to EEOC Below]*

*[handwritten note, right side: (2)]*

*[handwritten note, bottom right: False Wage!!! It.which could pay more when desired]*

   b. **Charging Party**

Charging Party was hired as a security officer on February 27, 2002. He was assigned to work a security officer post at American Buildings in Eufaula, Al at a rate of $6.25 per hour. After charging party was hired, he was asked to participate in DSI's standard orientation process which includes a detailed explanation of the rules and regulations that all officers are expected to follow. The Charging Party participated in this session and received training and information on the company's strict anti-discrimination

2

policy, and how to report any concerns he may have. At no time during Charging Party's employment did he make any member of DSI supervision or management aware that he felt that he was experiencing any form of racial or religious discrimination. DSI was not aware of any religious beliefs held by the charging party prior to the receipt this charge. (2)

On several occasions during 2005 and 2006 charging party complained about the wage he was being paid. On each occasion he was told that the wages would only be raised if DSI was able to negotiate such an increase with the customer. Charging Party also approached Mr. John Howard, who is employed by American Buildings and does not have any employer relationship to charging party. Mr. Howard also informed him that the issue was being addressed, but nothing was ever guaranteed. Ironically, at the time the charging party filed the complaint with the EEOC, DSI was close to securing an increase for the officers assigned to this facility. An increase was subsequently agreed to, and on January 1, 2007, all officers assigned to American buildings were given a $.50 wage increase to $6.75. (3)

It must be noted that during relevant times to this charge, both African American and Caucasian employees were working at American Buildings for the same pay.[2] There was no variance in wage according to race, religion, or any other factor. It appears that the charging party's only real evidence of racial or religious discrimination stems form his assumption that his lack of wage increases over the years must be due to some illegal factor, rather than the inherent nature of contract employment where no wage increase is ever guaranteed. (4)

## 2.  Charging Party Cannot Sustain a Charge of Racial or Religious Discrimination

### a.  Charging Party Does Not Meet the Legal Standard To Bring a Case of Racial Discrimination

As clearly indicated by the undisputed facts of this matter, the charging party has failed to meet the long-established legal criteria for bringing a charge of racial discrimination under Title VII of the Civil Rights Act of 1964. There are simply no facts to support the allegation that the charging party was denied a wage increase due to his race. Charging Party has the ultimate burden to make a prima facie case of discrimination in order to shift the burden to the employer[3], and it is obvious he has no facts that point to this other than his unsupported allegation. As the facts clearly point, he has not been treated any differently because of his race, nor has he suffered any adverse action based on his protected status.

---

[2] See Exhibit #2
[3] *McDonnell Douglas Corp. v. Green.* **411 U.S. 792** (1973)

3

b. **Charging Party Does Not Meet the Legal Standard To Bring a Case of Religious Discrimination** *Lying about Religion*

To date, there have been absolutely no acts of religious discrimination perpetrated on the Charging Party by DSI. The charging party has not been treated less favorably due to his sincerely held religious beliefs, nor has he been subjected to any form of harassment because of these beliefs. DSI has never been on notice that Charging Party held any particular religious belief, therefore, it is impossible to assume that the charging party could have been subject to discriminatory treatment.

(5)

Since charging party has failed to articulate how his religious beliefs bear any relation to his failure to receive a wage increase, and since there are no facts that could be produced to show that charging party has ever been treated differently due to his religious beliefs, it can only be reasoned that there is no legitimate basis for a claim of religious discrimination.

**CONCLUSION**

I can state unequivocally that Charging Party was not denied a wage increase due to his race or religion. As the facts clearly demonstrate that DSI did not discriminate against Charging Party, DSI respectfully submits that Charging Party's charge should be dismissed. Please call upon me if I can be of any further assistance during this investigation.

Sincerely,

Eddie Sorrells
General Counsel


Enclosures

4

Untitled

overturning a judgement. The court in Sutter v. Easterly (Mo) 189 SW2d 284, articulated the general rule defining fraud on the court within the courts of Missouri:

"... where a lawyer engages in a conspiracy to commit a fraud upon the court by the production of fabricated evidence and by such means obtains a judgement then the enforcement of the judgement becomes manifestly unconscionable' and a court of equity may devitalize the judgement." Id, at 288.

In State of Missouri, v. Robert Joe Mason, 394 S.W.2d 343, and many other similar cases, it is accepted that if a party is caught cheating, that it can be inferred that their cause is an unrighteous one and that their conduct is evidence of their guilt.

equitable estoppel
: an estoppel that prevents a person from adopting a new position that contradicts a previous position maintained by words, silence, or actions when allowing the new position to be adopted would unfairly harm another person who has relied on the previous position to his or her loss called also estoppel in pais
NOTE: Traditionally equitable estoppel required that the original position was a misrepresentation which was being denied in the new position. Some jurisdictions retain the requirement of misrepresentation.

promissory estoppel
: an estoppel that prevents a promisor from denying the existence of a promise when the promisee reasonably and foreseeably relies on the promise and to his or her loss acts or fails to act and suffers an injustice that can only be avoided by enforcement of the promise

Page 1

Untitled

20.    Cf. West v. Derby Unified School Dist. No. 260, 2000 WL 294093 (10th Cir. Mar. 21) (upholding school "racial harassment policy" that defined as harassing "clothing, articles, material, publications or any item that denotes Ku Klux Klan, Aryan Nation--White Supremacy, Black Power, Confederate flags or articles, Neo-Nazi or any other `hate' group'").


55.    Schwapp v. Town of Avon, 118 F.3d 106, 111-12 (2nd Cir. 1997).  See also Robinson v. Jacksonville Shipyards, Inc., 760 F. Supp. 1486, 1499 (M.D. Fla. 1486) ("The perception that the work environment is hostile can be influenced by the treatment of other persons of a plaintiff's protected class, even if that treatment is learned second-hand."); Dortz v. City of New York, 904 F. Supp. 127, 150 (S.D.N.Y. 1995) ("offensive statements made . . . outside of Plaintiff's presence, may also be viewed by a factfinder as having contributed to creating a hostile environment"); Barbetta v. Chelawn Services Corp., 669 F. Supp. 569, 572 (W.D.N.Y. 1987); Sims v. Montgomery County Comm'n, 766 F. Supp. 1052 (M.D. Ala. 1990):

I Paul Strickland Under the
Penalty of Perjury states that
Allen Wood and DSI said that they had a
three year Contract with American Building
that would be evaluate at the end of three years.
DSI made that statement in the year 2002.

Roger Reeves                3/6/2008

I Tiffinea ~~Linaus~~ Swear under Penalty of Perjury that Roger Reeves and I was exchanging hours on Fridays so he could go to Church.