CASE: 1:07-CV-00616-MHT.SRW

United STATES DISTRICT Court
MIDDLE DISTRICT OF ALABAMA

Roger Reeves,
Plaintiff
V.
DSI Security Services, et. al,
Defendants

Motion To FILE OUT OF TIME

Because of Confusion and mix up IN Page Numbering I am requesting A Motion to FILE OUT of TIME

I hereby Certify that on June 5, 2008 I file the foregoing with the Clerk of the Court and will send postage paid the same to the following persons:

David T. Wiley
Jackson Lewis LLP
First Commerical Bank Building
800 Shades Creek Parkway, Suite 870
Birmingham, AL. 35209

Danielle J. Hayot
Equal Opportunity Commission
1801 L ST. N.W.
Washington, D.C.

Daniel M. Shea
Paul R. Beshears
Nelson Mullins Riley &
Scarborough, LLP
999 Peachtree Street
NE 14th Floor
ATLANT, GA

6/5/2008                    Roger Reeves

CASE: 1:07-CV-00616-MHT-SRW

Roger Reeves,
Plaintiff

V.

DSI Security Services, et. al,
Defendants

Answer to Recommendation of the
MAGistrate Judge
(for DSI Summary Judgement)

The final issues that should be before the Court is one of Race, Religion, and Hostile Work Environment. EEOC charge as well as Charge in District Court states the same. Court has failed to address these Charges.

"The allegations in a judicial complaint file Pursuant To Title VII "may encompass any kind of discriminations like or related to the allegations contained in the charge and <u>growing</u> out of such allegation during the pendency of the case before the Commission"."

Plaintiff has provide evidence show that the information provided on Claim form was gleaned from Question provided by EEOC. It did not encompass his complete charge. Plaintiff Provided to EEOC additional information: Breaking Covenant of Good Faith, Wear X Flags, Management saying they dislike mixed couple, along with statement made by Management that they dislike my Bible, Not answering CB for Black until third or fourth time. These Documented hostile actions by Plaintiff more then state a Hostile environment was present at American Plant.

Plaintiff has also shown in previous answer to Summary Judgement that DSI has also provided directly a hostile and prejudice environment. A/.

(1) DSI showing Prejudice and hostility toward Plaintiff when he was first (7/2002) hired. Plaintiff has provided Document to Court showing that he has ABS in Computer Science and had work experience in Security. DSI hired for more hours another foreign employee.

(2) DSI permitted Dale Jones from (2002- ...) his work tenure to drive on Company Property with X License Plate. (Doc before Court Document 4 + Document 6 Recommendation to Magistrate Judge "American Flag DC1")

(3) DSI showing A Failure to Accommendate my Religion Convition and Lying about knowing I had any. I asked several time from 2002-2008 for time off for religious services but was denied

The two statement was explained in previous report to Court. The statement about the mixed couple was told to me by an American Employee (Jim Martin) (time period 2006) who stated that Management did not like mixed couple. He usually sit and have coffee with management in the Mornings.

The other statement was made by another American Employee that stated that Management did not like my Bible. (time period 2003-2004)

Statement made by a decision maker outside of Plaintiff presence but about Plaintiff can be very Probative. (SEE Answer to Magistrate Judge Report #5I; American)

These are only a few statement that points to a hostily discriminatory work environment. (sEE Answer to Magistrate Judge Report American and DSI).

I am asking Court to Grant Summary Judgement to Plaintiff and not to Defendant.

Document (Contract) at end of Report show DSI is not liable for Discriminatory Action that occur under this Contract so technically I am an American Employee and they are dually liable.

I swear under Penalty of Perjury that the afore information is correct.

6/3/08   Roger Reeves

Roger Reeves

Signed the 5th of June, 2008

Karen Cunigan
Comm Exp. 3-26-10

I hereby certify that on June 4, 2008 I filed the foregoing with the Clerk of the Court and will send postage paid the same to the following persons:

David T. Wiley
Jackson Lewis LLP
First Commercial Bank Building
800 Shades Creek Parkway, Suite 870
Birmingham, AL 35209

Danielle J. Hayot
Equal Employment Opportunity Commission
1801 L St. N.W.
Washington, D.C. 20507

Daniel M. Shea
Paul R. Beshears
Nelson Mullins Riley &
Scarborough, LLP
999 Peachtree Street
NE 14th Floor
Atlanta, Georgia 30309-3964



# Security Services Rate Sheet

This document shall be an integral part of the Security Services Agreement signed on __28th__ day of __February__, 20__02__, between Dothan Security, Inc. and __American Buildings Company, 1150 State Docks Rd., Eufaula, Alabama, 36027__.

The rate(s) will become effective on __February 28th, 2002__ and expire on __February 28th, 2003__. The rates will be based on:

[X]  A "factor" of __1.46%__ (%) percent mark up on all officer wages. Various wages can be established at anytime with __American Buildings__ prior approval.

[X]  Established officer wage(s) and billing rate(s).

| WAGE | STRAIGHT TIME BILLING RATE | + | OVERTIME BILLING RATE |
|---|---|---|---|
| $6.25 | $9.13 | | $13.14 |

"The Prices quoted are based upon __American Buildings Company__ agreeing to and signing Agreement without modification. Modification to this Agreement may require changes in quoted prices."

DOTHAN SECURITY, INC.

By __Craig Daughtry__

Title __Client Representative__

Customer __American Buildings Company__

By __Keith Fisher__

Title __President__

DSI Form AA-7 Rev. 10/00

CONFIDENTIAL
Not Intended for Public Disclosure

DSI/REEVES
000003



## ADDITIONAL PROVISIONS OF SECURITY SERVICES AGREEMENT

4. The hours of service will be defined by the Customer. Upon notification of acceptance by DSI of the schedule of service, these hours will then be deemed "normal". Normal hours can be changed upon one (1) day's written notice. DSI will remove any security officer not acceptable to the Customer upon written request showing reasonable ccause therefore.

5. All security officers furnished by DSI will be the employees of DSI, an independent contractor, and not employees of the Customer, and will be subject to direct supervision and control of DSI. DSI will have the sole responsibility to pay the wages, taxes (including but not limited to Social Sevcurity and Federal and State Unemployment Taxes) and all other expenses relating to each employee of DSI. DSI shall be responsible for the hiring, training and supervision of such employees. All orders relating to security officer duties given by the Customer will be strictly enforced; however, notwithstanding the foregoing, if the Customer alters any instructions or directions given to the security officer by DSI, or if the Customer assumes any supervision of said security officer, the Customer shall be solely liable and responsible for any and all such consequences.

6. Contrary to any other provisions provided for herein, the following will apply when coverage is provided during labor disputes and/or strikes of the Customer.

(a) The Customer shall indemnify and hold harmless DSI, its affiliates, agents and employees from and against any loss, damage, injury, liability, claim or lien (including the payment of all damages, expenses, costs and attorney's fees) for damage to property or injury to persons caused by employees of the Customer or other third parties.

(b) During the first ten (10) days of coverage that follows an initial ordering or increase in coverage (10% or greater of the average weekly hours), the Customer agrees to pay overtime for all shifts in excess of forty (40) hours in a week whether or not such overtime is paid to officers assigned to Customer location resulting from hours worked for the Customer. DSI will endeavor to minimize such overtime charges.

7. (a) DSI shall indemnify and hold harmless the Customer, its agents and employees (hereinafter referred to collectively in the singular as "Indemnitee") from and against any loss, damage, injury, liability, claim or lien for injury to person or property, or death of a person, resulting from the sole negligence or willful misconduct of DSI in the performance of DSI's work herein. DSI shall not indemnify and hold harmless Indemnitee from and against any loss, damage, injury, claim or lien for injury to person or property, or death of any person resulting from the negligence or willful misconduct of Indemnitee or defect on the premises, or for any strict liability or liability without fault which is imposed on or sought to be imposed on Indemnitee. The Customer shall notify DSI promptly of any known written claims or demands against it in connection herewith.

(b) The Customer shall indemnify and hold harmless DSI, its agents and employees (hereinafter referred to collectively in the singular as "indemnitee") from and against any loss, damage, injury, liability, claim, demand or lien (including the payment of all damages, expenses, costs and attorney's fees) for injury to person or property or death of a person, including injury to or death of Customer's agents or employees, resulting from the negligence, or willful misconduct of the Customer, or its agents or employees, or a dangerous or defective condition on the premises, or for any strict liability or liability without fault which is imposed on or sought to be imposed on the Customer, its agents or employees. The Customer shall not indemnify and hold harmless Indemnitee from and against any loss, damage, injury, liability, claim or lien for injury to person or property or death of any person resulting from the sole negligence or willful misconduct of Indemnitee. DSI shall notify the Customer promptly of any known written claims or demands against it in connection herewith.

(c) The Customer agrees to indemnify and hold harmless DSI and its employees, from any and all loss, damage, injury, liability, claim or cause of action for injury to person or property arising out of the detention of any person by DSI employees upon direction of the Customer, except for such loss, death or injuries occasioned by the willful misconduct or sole negligence of said employee in detaining a suspect. The right of indemnity herein shall include the provision of a defense in any action pertaining to a claim of false arrest or battery and payment of all costs, judgements or settlements in connection therewith.

(d) In the event DSI is brought into a lawsuit directly or indirectly by the Customer throught a cross-complaint seeking indemnity based on a determination of the respective proportion or percentage of fault and apportionment of damages according to said percentage of fault, the Customer agrees to indemnify and hold harmless DSI from and against any loss, damage, expenses, costs and attorney's fees incurred in defending said cross-complaint in the event the Customer falls to obtain apportionment respecting DSI.

(e) The Customer agrees to indemnify and hold harmless DSI and its employees, from any claims of discrimination based on race, color, national origin, sex, age, religion, or disability arising from acts performed by DSI employees pursuant to the directions of Customer, except for such claims of discrimination occasioned by the willful misconduct or sole negligence of said DSI employee. The right of indemnity herein shall include the provison of a defense in any action pertaining to a claim of discrimination and payment of all costs, judgements or settlements in connection therewith.

(f) Special Trucking Liability Addendem applies and is incorporated into this Agreement and supercedes liability classes in paragraph 6 (a)-(c) ☐ Customer Initials ☐ DSI.

8. If Customer requires DSI personnel to drive any vehicle or mobile equipment during the course of their duties, other than the security officer's own personal vehicle or a vehicle furnished by DSI, Customer agrees to carry Comprehensive Fire and Theft, Collision and Liability Insurance on Customer's vehicles (Not less than One Million Dollars) and agrees that it will waive all rights of recovery from DSI, its officers, agents, servants, and employees from any and all losses, liability, claims, demands, thefts and expenses which Customer may suffer or incur for any claims, demands, action, suits or causes of action which may be made or had against it, arising out of the operation or use of vehicles which it had authorized or permitted DSI or its employees to operate in connection with the services supplied by DSI.

Customer also agrees to name DSI, its officers, agents, servants, and employees as additional insured and "permissive users" to Customers automobile insurance policy and to provide DSI an original Certificate of Insurance.

The Customer recognizes that the agents or employees of DSI, or the automobiles or mobile equipment furnished by the Customer's for the use of DSI, may be injured or damaged accidentally. The Customer therefore agrees to indemnify and save DSI, its agents and employees, harmless from any and all loss, damage, injury, liability, claim or cause of actin for injury to person or property, including the automibiles or mobile equipment resulting from DSI or its agents or employees' use of such automobiles or mobile equipment, except for such loss or injuries occasioned by the willful misconduct of said employee or agent. The right of indemnity shall include the provision of a defense in any action pertaining to a claim hereunder.

9. Either party may cancel this Agreement at any time upon thirty (30) days' written notice by Certified Mail.

10. (a) In the event of default as defined in Article 13 below, DSI may terminate this Agreement upon twenty-four (24) hours notice (notice period) to Customer, unless the default is cured within the notice period.

(b) DSI, upon the termination of this Agreement, shall have the right within a reasonable time after such termination, to remove from the sites any and all of its equipment and other property.

11. It is agreed that DSI is not an employment agency and the security officers it furnishes are made possible only by a substantial investment in advertising, recruiting, testing and training of personnel. In consideration of the time and expense invested in these security officers, it is agreed that the Customer will not hire any security officer from DSI while the security officer is still employed by DSI, or for ninety (90) days after termination of the security officer from DSI. Customer agrees to pay a placement fee of $500 for every DSI employee that Customer hires. Customer further agrees that DSI officers shall not be permitted to work on the Customer's site for another security company or in a proprietary program for six months after DSI's contract ends. DSI shall be cmpensated at $500 per employee in violation of this clause.

12. Reference to written notice in this Agreement shall be construed to mean written notice delivered to either party by first class certified mail, return receipt requested to the party at the address above or such other address as the party may designate by itself by written notice to the other.

13. (a) The occurrence of any of the following shall be deemed a default under this Agreement and DSI shall have the right to terminate this Agreement by reason of
  (i) failure of Customer to comply with any terms of this Agreement;
  (ii) failure of Customer to make any payment by the date when payment is due in accordance with terms of this Agreement.

(b) In the event that the Customer shall default and DSI shall deem it necessary to refer its claim for collection from the Customer to its attorneys, the Customer agrees to pay any and all court and other costs incident to collection and any and all reasonable attorneys' fees incurred by DSI in connection therewith. Customer acknowledges that all payments due under this Agreement are payable in Dothan, Alabama, and therefore, the venue for any action filed by DSI for collection of said payments shall be in Houston County, Alabama.

14. The Agreement may not be modified orally, but only in writing signed by the parties hereto.

15. DSI incorporates by reference and makes a part of this Contract the EEO clause set forth in CFR 60-1 4 (a) (1)-(7), 60-250.4 and 60-741.4, and the "Americans With Disabilities Act of 1990" as amended.

16. Any failure by DSI at any time, or from time to time, to enforce or require the strict keeping and performance of any of the terms of this Agreement, or to exercise a right hereunder, shall not constitute a waiver of, and shall not affect the right of DSI at any time to avail itself of same.

17. This Agreement is entire as to all of the performances to be rendered under it. If there is a discrepancy between any document and the Agreement, then the Agreement and any attachment or addendum thereto shall govern. If there is a discrepancy between the Agreement and any other document comprising part of or attached to the Agreement, then the Agreement shall govern.

18. This Agreement shall be binding upon successors, assigns or transferees of Customer.

DSI Form AA-6 Rev. 10/99

CONFIDENTIAL
Not Intended for Public Disclosure

DSI/REEVES
000002

*Document 2*

  # SECURITY SERVICES AGREEMENT 

THIS AGREEMENT made this ___28th___ day of __February__, in the year of __2002__, as between Dothan Security, Inc., a corporation in the State of Alabama, (hereinafter referred to as "DSI") and __American Buildings Company, 1150 State Docks Rd., Eufaula, Al. 36027__ (hereinafter referred to as "the Customer"). Customer is doing business as a(n) __Corporation__ (individual, partnership, corporation – please designate) formed in the State of ~~Alabama~~ _Delaware_.

1. DSI shall furnish the Customer uniformed security service as required by the Customer at __1150 State Docks Road, Eufaula, Alabama, 36027__ and any other locations as may be directed by the Customer.

2. This Agreement shall become effective on __February 28th__, in the year of __2002__, and shall remain in force until cancelled as herein provided. This Agreement, and all terms herein, may not be amended or modified in whole or in part, except by a writing specifically referring to the portion or portions of this Agreement to be amended or modified and executed by the parties hereto.

3. The rate of security services is as outlined on the Security Services Rate Sheet which is attached hereto and upon its execution by the parties shall become an integral part hereof.

   (a) Overtime rates apply for the below listed holidays:
   New Year's Day   Memorial Day   Independence Day   Labor Day   Thanksgiving Day   Christmas Day

   (b) Overtime occurring on any of the above listed holidays will be billed at the overtime rate.

   (c) Overtime will only be billed with the approval of the Customer; however in the event that abnormally bad weather conditions and/or natural disasters create road conditions that prevent our personnel from getting to or from their posts, the overtime incurred by DSI for officers stranded on the job (in a working status) and the overtime for replacement officers filling posts when the normally assigned officer is stranded at home or in his/her community shall be billable to the Customer.

   This paragraph will in no way give relief to DSI for shortages of manpower due to illness, vacation or any other normal operational function.

   (d) The rates specified in this Agreement shall remain in effect through __February 28th, 2003__. DSI will issue to the Customer thirty (30) days prior to the anniversary date a statement of rate increases, the acceptance of which shall constitute a revision of rates to this Agreement effective upon the anniversary date, the parties agree that the rates currently in effect at the anniversary date shall automatically increase four percent (4%) and continue unless and until rate increases are negotiated and mutually agreed upon by the parties. Notwithstanding the foregoing, Customer agrees to reimburse DSI for any increase in costs caused by government mandated increases in wages, benefits or payroll based taxes. Any increase in cost will be accounted for in, and become a part of each periodic bill.

   (e) DSI will bill the Customer weekly. Payment shall be made by the Customer to DSI without discount, not later than ten (10) days after the date of billing. Past due accounts shall bear a service charge of the lesser of two percent (2%) per month or the legal maximum rate allowed.

   (f) Prices quoted are based upon __American Buildings Company__ agreeing to and signing Agreement without modification. Modification to this Agreement may require changes in quoted prices.

THE PARTIES AGREE TO CONFORM TO ALL OF THE ADDITIONAL PROVISIONS OF THE SECURITY SERVICES AGREEMENT ON THE REVERSE SIDE HEREOF, WHICH PROVISIONS ARE HEREBY MADE A PART OF THIS SECURITY SERVICES AGREEMENT.

DOTHAN SECURITY, INC.  
Craig Daughtry  
By _/s/ Craig Daughtry_  
Title __Client Representative__

CUSTOMER  
__American Buildings Company__  
By _/s/ Keith Fisher_  
Title __President__

CONFIDENTIAL
Not Intended for Public Disclosure

DSI/REEVES
000001

Document 2





May 31, 2006

American Buildings Company
Eufaula, AL

**ATTN: John Howard**

RE:   Rate Change

The below chart represents your current pay and bill rates on your various guard services as well as the proposed increases on pay and bill rates.

| Current Pay | Current Bill | Proposed Pay | Proposed Bill |
|---|---|---|---|
| $6.25 | $9.38 | $6.75 | $10.13 |

Thanks a lot for your consideration of this proposal. Please let me know if you need additional information. I look forward to hearing from you in the near future.

Sincerely,


Pat Silberman
Branch Manager
DSI Security Services


*"The safest choice you can make"*

CONFIDENTIAL
Not Intended for Public Disclosure

DSI/REEVES
000004