CASE: 1:07 CV-00612 MHT-SRW

Roge. Reeves,
        Plaintiff
    V.
DSI Security Services, et al,
        Defendants

RECEIVED

2008 JUN -6 A 11: 01

___ P. HACKETT ___
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

## Answer to Recommendation of The MAGistrate Judge

Again my orginal Complaint was one of Race, Hostile env,
Religion, and Wages (RACE, Religion). This charge is
Continuedly being overlooked in all answers. The race and
religion Charges has been directly proven against American
Building in Documents before the Court (More Hours
given to White Employee (Dale Jones) and allowed to work
when he did not want to. Court would not allow discovery
right so I could provide evidence showing Dale Jones was assign more hours than Plaintiff.

Plaintiff has proved that the wrong standard was used to determine Similiary Sisuated Employers. A prima facie Case would be evidence if the Judge ~~use~~ had use the Correct Standard.

(1) Qualified member of protected class

(2) Subject to adverse employment action

No promised raise Given

Defendant : is claiming that he never Promise one or has been silent on this issue. Someone is not truthful

(3) Similiar Sisuated Employees given (outside the protected class) there promised raise. Plaintiff a member of the protected class was not.

(4) Management has shown a tendency to be biased in matter : pertaining to Plaintiff in Asking DSI Employee Dale Jones (white) to Work ~~when~~ he did not want to. Dale told me that he did not want the overtime Hours. Raise were posted on Bullentin Board but Judge Would not allow that information on Discovery. Dale came in and was allowed to work the Hours.

②

Management stating in front of Personnel (company employee) that they did not like my bible. This shows a direct bias that would effect the term and condition of my employment especially at raise time. A prima Facie Case has already been proven in these matters alonco America Employee Willk Smoke told me this information directly in year 2003-2004.

Court Documents show in answer to another Summary Judgement that Plaintiff has stated that he was Similiary sisuated to Plant Employees who were promised a Wage increase and recived three on time raises. He was not similiary sisuoted to employees who were not promise a raise, were not on board when promise, did not expect a raise, And had no knowledge that one was coming. Most guards employed did not have enough time to expect a raise.

To show similiar sisuation one must be similiar sisuoted in every respect.

Plaintiff has shown that a prima facic Case exists.

Plaintiff has shown that he eyewitness several incidents that would state a hostile environment. I will added some detail not previously in record.

Eye Witness Events AND HEARD Events

(1) American Employees three or
4 employees on more than one
Occassion from my beginning
Employment to After filing of
these Charges wearing the
Confederate [X] Flag sown on
their clothing. Period of time (2002-2005)
Delivering Pay on Thursdays.

(2) Plaintiff was redicule by Shipping
Supervisor when person Name Roger died.
They joked and said that I told them
it was not you. This shows that by their
joking and jest that management had a
Predisposition and that the work environment
was premested with hostility against the
Plaintiff. Period (2005)

(3) Plaintiff has witness and heard with
his own ear Management in the Plant and
shipping refusing to answer the CB until
the 3rd or fourth Call from a Black person
but the First Call from a white person including myself.

(4) American sent out Greasy, Oily, Dirty, Plant worker out to inspect mopped floor to embrass me on first month of Employment.

(5) I have Witness calling White Worker after Hour and they refuse to come out. Only the Black Worker from Clayton would come out from 20 miles away. (2002-2005)

(6) American has not provided Promise Wage that John Howard (American Personnel Plant Manager) Promised in April of 2006. He said that I was a fixture around here and that he would put the Paper Work in. I was told two weeks later that DSI had the paperWork. Not providing the raise and breaking the Covenant of Good Faith they Created a hostile Work environment.

(7) American through John Howard has asked for member not of Protected Class (Dale Jones) to work over member of Protected Class (Plaintiff) when Dale Jones told me he did not want to work but Allen Wood and John Howard insisted that he work.

⑤

Document 2 shows Contract America Signed with DSI and also a report Showing on at least one occassion Discriminatory action in not giving the full wages per Hours. DSI stated that they have never given the Same Wage amount to all Guards.

Document 2 shows that DSI and American are using deception when they say they were not able to negociate a new Contract when 4% was given every year the Contract was in existence. There were funds available to both American and DSI to give promise raise.

Plaintiff has provide Court with Document (Diploma) showing Plaintiff more qualified then former Guard but previous Guard given 40 Hours to Plaintiff 20 Hours. Plaintiff has provide Court with ample evidence to support a Prima facie Case and Hostile Work Environment Claim. Defendant evidence is Conclusory, not the Plaintiff. The Defendant has only produce lies while Plaintiff has Signed Signature stating Contract length and Religious lies toward Plaintiff. ~~Plaintiff has~~ Plaintiff has

refuted DSI lies        regarding their Knowledge
of Plaintiff religious affiliation.


Court (District Judge) has stated that

DSI walking out of EEOC does not constitute an

Adverse Employment Action. Their action change the

term Condition and Previledge of Employment. Their

action cause great Emotional Stress, loss of Settlement

in a Normal Environment and Subjection to great financial

loss by having to have the matter adjudicated in Court.
(SEE Answer to Magistrate Judge Report DSI Americans)

I was quite shock when they jumped up and left the room.

I lost my right to a fair ADR and EEOC process.

DSI has stated in Court Document that ADR Co-Ordinator

call and ask him to go to another ADR Session because I

was upset with the first One. He has shown that their was

Something wrong with the first one. Breaking the Law in

the EEOC and Showing Animus is grounds for Summary Judgement

for the Plaintiff and not the Defendant.

By these Actions American has created a hostile work Environment and shown racial prejudice. Discrimination occured around Year 2005.

(8) American showing prejudice when Plant Worker Jimmy Martin lead them in Conversation stating that they, Personal, did not like wife (KimBil Ham) wife of a mixed Couple. (June 2006) American has created a prejudice and hostile Work environment by doing this. These action show that they would be influenced when giving a member of the Protected Class a raise when other member were unaware that a raise was promise. American with prejudice, malice and forethought decided to keep the promise wage and lie that one was ever promised.

(9.) American has intimidating DSI Management into writing a Bad Review about an accident that happned. DSI Personavel Manager told me that American though I deserve a stronger Reprike. American in doing this has provide a hostile work environment, shown prejudice, And shown that American has taken Part in the displaskay

Process thereby creating a Joint Employer. They have stated that they do not take part in chastising DSI employers. In previous answer to Magistrate Judge Report it was Document that on Dec. 21, 2007 the incident occurred.

(10.)    American by Not giving raise to Guards mostly (Protected Class) has show prejudice and disparate impact. American only provided raise when EEOC Process was implemented. American has shown prejudical action.

(11) American has shown prejudice against Plaintiff when American Employee Willie Smoke told me around year 2004 that they American did not like my Bible.

~~Not a hostile Work environment.~~

Plaintiff is providing Contracts showing

that it was a one year Contract and that DSI
recieve 4% a Year and have financials to give promise wage.

(12) Truck Drivers from American told

me that Management said that they should
"run over" fromer Security Guard with
Same religious affilication. DSI Management (Alfred Wood)
on first Day of Employment said that they were
getting rid of two employee at American and said
that they were try to fire the rest of them also.
The black Security Guard was the one
they were trying to get rid of. I overheard

Truck drivers Numerous times state

that former employee Mr. Johnson (Black) was not
well liked because of his religious attitude. Not
allowing Crusing or Smoking in Guard Shack and
Preaching to whoever had an ear. American
has show hostility and prejudice toward forfoveal
Pentecostal Preacher such as myself.

(10)

Plaintiff has provided Documentation showing that American Building Name was found in the file (Document Answer to Summary Judgement) EEOC dropped the ball. The plaintiff should not suffer when EEOC dropped a well time Charge as per Plaintiff answer to Summary Judgement. (SEE Doc. 1)

I think Magistrate Judge should have ask for for a more definite Statement under Rule 12(c) rather than give Summary Judgement to a well meritorous Case. (Document 1). She states that some answer are Vague and without depth.

I provided EEOC with information including Employee Wearing [X] Confederate Flags sewed on their Clothing which States with the other information about Black + White Couple and Religious Statements a Hostile Work Environment.

Jan W. Spitzer Declaration 12 and
13 of American's Motion for Summary
Judgement states that American

11 had no knowledge that Roger Reeves
filed any charge of discrimination or initiated
any proceedings with the EEOC untill he filed
the complaint in this action".

11. American Buildings was not invited to and
had no opportunity to participate in any EEOC
investigation, mediation, or conciliation concerning
Roger Reeves' charge of discrimination."
EEOC intake personel told me that they had mailed
to American the charge around Oct. 2006.
DSI lawyer also stated that American was told
about the charge in Dec 2006 and stated that the best
they could do was .50 in January.
I don't think Summary Judgement should be

granted where lying has been proven. I think
Summary Judgement should have been given Plaintiff.

DSI personnel    wrote up disciplinary report and
told me that American though I deserved a sharper
reprimand than I had received. American by doing
this put itself in the place of a Co-Employer. They
should not be granted Summary Judgement for saying
in Spitzer Declaration that they take no part in
the disciplinary proceeding of DSI Employees. They
should be held accountable for their actions. (SEE Document ) and
Lying.

If judge had used Standard to show that a hostile
Work environment existed and these acts might have
influence the giving of a rise a prima facie Case
is Proven.   A management tendency to be discriminatory
at other times against members of the protected Class
~~Shows~~ [And] Management having a bais against another member
Of the protected Class (Plaintiff) shows Hostility
(SEE Answer to Magistrate Judge Report Document 6 for
American Building) and is highly probative.


A prima facie Case was establish with Retext.
(SEE Document 3)
If the Defendant is shown to have lied, reason is
unbelievable, or Submitted false Documents to Court
judgement should be awarded to Plaintiff. Plaintiff
has provided Court with Document showing Defendant
being untruth about Contract, untruthful about Plaintiff
Religion and stating that they have never being discrimination
in Plaintiff wages Knowing they have descriminated in over
Time Hours and assigning Non Protected members to Work
over Protected Members (Plaintiff). Defendant is Lying
when he said no raise was promise to Plaintiff.
(SEE Answer to Magistrate Judge Report (BSI + American)

⑭

American Personell Manager John Howard told me in April that the Paper Work was put in and DSI had the paper Work. I was told that on Memorial Day Weekend by DSI that they were going to sign the Contract. They Know that it was a one year Contract. Both of them were lying or decided to Lie and keep or Not give the promise Wage. I think that if the other white employees had been on board that Knew what was promise that I would have been given the raise. The "what IF" test is proven here. They (DSI and American) saw an opportunity Not to give what was promised because I was Black and No one else was present who Knew what was promised years ago.

Defendant America Building, has asked for Dismissal with Prejudice. Defendant is asking for a well meritorious case to be dismissed with Prejudice. They have provide a hostile Work environment, submitted lies to the Court, and not provided a Promised Wage which was Documented by Plaintiff and attest to in sworn Documents. Plaintiff has provided to the Court Sworn Documents refuting that American and DSI knew beyond a show of a doubt that I had religious affiliation. One member of Management stated the I did not preach as much as Mr. Johnson (former American Employee) American Contract states that they are liable for all acts (Discriminatory) Comitted by DSI. (Contract Provided).

In the Case Ghazzawi v. United States Postal Service EEOC Appeal No. 01A15327 (Apr. 23, 2002) Pretex was found. This case is very similar to my Case. With Prejudice and

Dismissal was not granted in that Case and
Should not be granted in my Case. (SEE Document 5)

American has not been truthful in their liability part.
They are liable and knew that they were liable for
Discriminatory acts Committed by DSI. Summary Judgement
Should be given Plaintiff and not Defendant.

6/5/08

Roger Reeves

I Swear Under Penalty of Perjury
that the above Information is Correct
to the best of my Knowledge and is of a
Sound Mind to testify Such.

6/3/08 Roger Reeves

Roger Reeves

Sworn this 5th of
June, 2008

Kan Cunnigh

Com Exp. 3-26-10

DOCUMENT 1

Untitled

The Solicitor General's brief concludes that "when the [EEOC] regrettably drops the ball in handling a timely submitted charge, defendants are not entitled to a windfall in the form of the dismissal of a potentially meritorious age discrimination suit."

Kennedy echoes this argument as well, observing that plaintiffs should not suffer for the failures of the EEOC. Often, the EEOC takes no action on charges before it; plaintiffs should not be penalized for something so ordinary and beyond their control.

*Document 2*



# Security Services Rate Sheet

This document shall be an integral part of the Security Services Agreement signed on ___28th___

day of __February__ , 20 _02_ , between Dothan Security, Inc. and __American Buildings__

__Company__, 1150 State Docks Rd., Eufaula, Alabama, 36027 .

The rate(s) will become effective on __February 28th, 2002__ and expire on

__February 28th, 2003__ . The rates will be based on:

[X]  A "factor" of __1.46%__ (%) percent mark up on all officer wages. Various wages can be established at

anytime with __American Buildings__ prior approval.

[X]  Established officer wage(s) and billing rate(s).

| WAGE | STRAIGHT TIME BILLING RATE | + | OVERTIME BILLING RATE |
|------|----------------------------|---|-----------------------|
| $6.25 | $9.13 | | $13.14 |
|  |  | |  |
|  |  | |  |
|  |  | |  |

"The Prices quoted are based upon __American Buildings Company__ agreeing
to and signing Agreement without modification. Modification to this Agreement may require changes in quoted
prices."

DOTHAN SECURITY, INC.

By __Craig Daughtry__

Title __Client Representative__

Customer __American Buildings Company__

By _Keith Fisher_

Title _President_

DSI Form AA-7 Rev. 10/00

CONFIDENTIAL
Not Intended for Public Disclosure

DSI/REEVES
000003

## ADDITIONAL PROVISIONS OF SECURITY SERVICES AGREEMENT

4. The hours of service will be defined by the Customer. Upon notification of acceptance by DSI of the schedule of service, these hours will then be deemed "normal". Normal hours can be changed upon one (1) day's written notice. DSI will remove any security officer not acceptable to the Customer upon written request showing reasonable cause therefore.

5. All security officers furnished by DSI will be the employees of DSI, an independent contractor, and not employees of the Customer, and will be subject to direct supervision and control of DSI. DSI will have the sole responsibility to pay the wages, taxes (including but not limited to Social Security and Federal and State Unemployment Taxes) and all other expenses relating to each employee of DSI. DSI shall be responsible for the hiring, training and supervision of such employees. All orders relating to security officer duties given by the Customer will be strictly enforced; however, notwithstanding the foregoing, if the Customer alters any instructions or directions given to the security officer by DSI, or if the Customer assumes any supervision of said security officer, the Customer shall be solely liable and responsible for any and all such consequences.

6. Contrary to any other provisions provided for herein, the following will apply when coverage is provided during labor disputes and/or strikes of the Customer.

(a)   The Customer shall indemnify and hold harmless DSI, its affiliates, agents and employees from and against any loss, damage, injury, liability, claim or lien (including the payment of all damages, expenses, costs and attorney's fees) for damage to property or injury to persons caused by employees of the Customer or other third parties.

(b)   During the first ten (10) days of coverage that follows an initial ordering or increase in coverage (10% or greater of the average weekly hours), the Customer agrees to pay overtime for all shifts in excess of forty (40) hours in a week whether or not such overtime is paid to officers assigned to Customer location resulting from hours worked for the Customer. DSI will endeavor to minimize such overtime charges.

7. (a) DSI shall indemnify and hold harmless the Customer, its agents and employees (hereinafter referred to collectively in the singular as "Indemnitee") from and against any loss, damage, injury, liability, claim or lien for injury to person or property, or death of a person, resulting from the sole negligence or willful misconduct of DSI in the performance of DSI's work herein. DSI shall not indemnify and hold harmless Indemnitee from and against any loss, damage, injury, liability, claim or lien for injury to person or property, or death of any person resulting from the negligence or willful misconduct of Indemnitee or defect on the premises, or for any strict liability or liability without fault which is imposed on or sought to be imposed on Indemnitee. The Customer shall notify DSI promptly of any known written claims or demands against it in connection herewith.

(b)   The Customer shall indemnify and hold harmless DSI, its agents and employees (hereinafter referred to collectively in the singular as "Indemnitee") from and against any loss, damage, injury, liability, claim, demand or lien (including the payment of all damages, expenses, costs and attorney's fees) for injury to person or property or death of a person, including injury to or death of Customer's agents or employees, resulting from the negligence, or willful misconduct of the Customer, or its agents or employees, or a dangerous or defective condition on the premises, or for any strict liability or liability without fault which is imposed on or sought to be imposed on the Customer, its agents or employees. The Customer shall not indemnify and hold harmless Indemnitee from and against any loss, damage, injury, liability, claim or lien for injury to person or property or death of any person resulting from the sole negligence or willful misconduct of Indemnitee. DSI shall notify the Customer promptly of any known written claims or demands against it in connection herewith.

(c)   The Customer agrees to indemnify and hold harmless DSI and its employees, from any and all loss, damage, injury, liability, claim or cause of action for injury to person or property arising out of the detention of any person by DSI employees upon direction of the Customer, except for such loss, death or injuries occasioned by the willful misconduct or sole negligence of said employee in detaining a suspect. The right of indemnity herein shall include the provision of a defense in any action pertaining to a claim of false arrest or battery and payment of all costs, judgements or settlements in connection therewith.

(d)   In the event DSI is brought into a lawsuit directly or indirectly by the Customer through a cross-complaint seeking indemnity based on a determination of the respective proportion or percentage of fault and apportionment of damages according to said percentage of fault, the Customer agrees to indemnify and hold harmless DSI from and against any loss, damage, expenses, costs and attorney's fees incurred in defending said cross-complaint in the event the Customer fails to obtain apportionment respecting DSI.

(e)   The Customer agrees to indemnify and hold harmless DSI and its employees, from any claims of discrimination based on race, color, national origin, sex, age, religion, or disability arising from acts performed by DSI employees pursuant to the directions of Customer, except for such claims of discrimination occasioned by the willful misconduct or sole negligence of said DSI employees. The right of indemnity herein shall include the provision of a defense in any action pertaining to a claim of discrimination and payment of all costs, judgements or settlements in connection therewith.

(f)   Special Trucking Liability Addendum applies and is incorporated into this Agreement and supercedes liability classes in paragraph 6 (a)-(c) ☐ Customer Initials ☐ DSI.

8. If Customer requires DSI employees to drive any vehicle or mobile equipment during the course of their duties, other than the security officer's own personal vehicle or a vehicle furnished by DSI, Customer agrees to carry Comprehensive Fire and Theft, Collision and Liability Insurance on Customer's vehicles (Not less than One Million Dollars) and agrees that it will waive all rights of recovery from DSI, its officers, agents, servants, and employees from any and all losses, liability, claims, demands, thefts and expenses which Customer may suffer or incur for any claims, demands, action, suits or causes of action which may be made or had against it, arising out of the operation or use of vehicles which it had authorized or permitted DSI or its employees to operate in connection with the services supplied by DSI.

Customer also agrees to name DSI, its officers, agents, servants, and employees as additional insured and "permissive users" to Customers automobile insurance policy and to provide DSI an original Certificate of Insurance.

The Customer recognizes that the agents or employees of DSI, or the automobiles or mobile equipment furnished by the Customer's for the use of DSI, may be injured or damaged accidentally. The Customer therefore agrees to indemnify and save DSI, its agents and employees, harmless from any and all loss, damage, injury, liability, claim or cause of action for injury to person or property, including the automobiles or mobile equipment resulting from DSI or its agents or employees' use of such automobiles or mobile equipment, except for such loss or injuries occasioned by the willful misconduct of said employee or agent. The right of indemnity shall include the provision of a defense in any action pertaining to a claim hereunder.

9. Either party may cancel this Agreement at any time upon thirty (30) days' written notice by Certified Mail.

10. (a) In the event of default as defined in Article 13 below, DSI may terminate this Agreement upon twenty-four (24) hours notice (notice period) to Customer, unless the default is cured within the notice period.

(b)   DSI, upon the termination of this Agreement, shall have the right within a reasonable time after such termination, to remove from the sites any and all of its equipment and other property.

11. It is agreed that DSI is not an employment agency and the security officers it furnishes are made possible only by a substantial investment in advertising, recruiting, testing and training of personnel. In consideration of the time and expense invested in these security officers, it is agreed that the Customer will not hire any security officer from DSI while the security officer is still employed by DSI, or for ninety (90) days after termination of the security officer from DSI. Customer agrees to pay a placement fee of $500 for every DSI employee that Customer hires. Customer further agrees that DSI officers shall not be permitted to work on the Customer's site for another security company or in a proprietary program for six months after DSI's contract ends. DSI shall be compensated at $500 per employee in violation of this clause.

12. Reference to written notice in this Agreement shall be construed to mean written notice delivered to either party by first class certified mail, return receipt requested to the party at the address above or such other address as the party may designate by itself by written notice to the other.

13. (a) The occurrence of any of the following shall be deemed a default under this Agreement and DSI shall have the right to terminate this Agreement by reason of
    (i) failure of Customer to comply with any terms of this Agreement.
    (ii) failure of Customer to make any payment by the date when payment is due in accordance with terms of this Agreement.

(b)   In the event that the Customer shall default and DSI shall deem it necessary to refer its claim for collection from the Customer to its attorneys, the Customer agrees to pay any and all court and other costs incident to collection and any and all reasonable attorneys' fees incurred by DSI in connection therewith. Customer acknowledges that all payments due under this Agreement are payable in Dothan, Alabama, and therefore, the venue for any action filed by DSI for collection of said payments shall be in Houston County, Alabama.

14. The Agreement may not be modified orally, but only in writing signed by the parties hereto.

15. DSI incorporates by reference and makes a part of this Contract the EEO clause set forth in CFR 60-1 4 (a) (1)-(7), 60-250.4 and 60-741.4, and the "Americans With Disabilities Act of 1990" as amended.

16. Any failure by DSI at any time, or from time to time, to enforce or require the strict keeping and performance of any of the terms of this Agreement, or to exercise a right hereunder, shall not constitute a waiver of, and shall not affect the right of DSI at any time to avail itself of same.

17. This Agreement is entire as to all of the performances to be rendered under it. If there is a discrepancy between any document and the Agreement, then the Agreement and any attachment or addendum thereto shall govern. If there is a discrepancy between the Agreement and any other document comprising part of or attached to the Agreement, then the Agreement shall govern.

18. This Agreement shall be binding upon successors, assigns or transferees of Customer.

DSI Form AA-6  Rev. 10/99

CONFIDENTIAL
Not Intended for Public Disclosure

DSI/REEVES
000002

*Document 2*




# SECURITY SERVICES AGREEMENT

THIS AGREEMENT made this ___28th___ day of ___February___, in the year of ___2002___, as between Dothan Security, Inc., a corporation in the State of Alabama, (hereinafter referred to as "DSI") and __American Buildings Company, 1150 State Docks Rd., Eufaula, Al. 36027__ (hereinafter referred to as "the Customer"). Customer is doing business as a(n) ___Corporation___ (individual, partnership, corporation – please designate) formed in the State of ~~Alabama~~ _Delaware_.

1.  DSI shall furnish the Customer uniformed security service as required by the Customer at __1150 State Docks Road, Eufaula, Alabama, 36027__ and any other locations as may be directed by the Customer.

2.  This Agreement shall become effective on ___February 28th___, in the year of ___2002___, and shall remain in force until cancelled as herein provided. This Agreement, and all terms herein, may not be amended or modified in whole or in part, except by a writing specifically referring to the portion or portions of this Agreement to be amended or modified and executed by the parties hereto.

3.  The rate of security services is as outlined on the Security Services Rate Sheet which is attached hereto and upon its execution by the parties shall become an integral part hereof.

    (a) Overtime rates apply for the below listed holidays:
    New Year's Day    Memorial Day    Independence Day    Labor Day    Thanksgiving Day    Christmas Day

    (b) Overtime occurring on any of the above listed holidays will be billed at the overtime rate.

    (c) Overtime will only be billed with the approval of the Customer; however in the event that abnormally bad weather conditions and/or natural disasters create road conditions that prevent our personnel from getting to or from their posts, the overtime incurred by DSI for officers stranded on the job (in a working status) and the overtime for replacement officers filling posts when the normally assigned officer is stranded at home or in his/her community shall be billable to the Customer.

    This paragraph will in no way give relief to DSI for shortages of manpower due to illness, vacation or any other normal operational function.

    (d) The rates specified in this Agreement shall remain in effect through ___February 28th, 2003___. DSI will issue to the Customer thirty (30) days prior to the anniversary date a statement of rate increases, the acceptance of which shall constitute a revision of rates to this Agreement effective upon the anniversary date, the parties agree that the rates currently in effect at the anniversary date shall automatically increase four percent (4%) and continue unless and until rate increases are negotiated and mutually agreed upon by the parties. Notwithstanding the foregoing, Customer agrees to reimburse DSI for any increase in costs caused by government mandated increases in wages, benefits or payroll based taxes. Any increase in cost will be accounted for in, and become a part of each periodic bill.

    (e) DSI will bill the Customer weekly. Payment shall be made by the Customer to DSI without discount, not later than ten (10) days after the date of billing. Past due accounts shall bear a service charge of the lesser of two percent (2%) per month or the legal maximum rate allowed.

    (f) Prices quoted are based upon ___American Buildings Company___ agreeing to and signing Agreement without modification. Modification to this Agreement may require changes in quoted prices.

THE PARTIES AGREE TO CONFORM TO ALL OF THE ADDITIONAL PROVISIONS OF THE SECURITY SERVICES AGREEMENT ON THE REVERSE SIDE HEREOF, WHICH PROVISIONS ARE HEREBY MADE A PART OF THIS SECURITY SERVICES AGREEMENT.

DOTHAN SECURITY, INC.
Craig Daughtry
By _(signature)_
Title   Client Representative

CUSTOMER
American Buildings Company
By _(signature)_
Title   _President_

CONFIDENTIAL
Not Intended for Public Disclosure

DSI/REEVES
000001

*Document 2*

㉑



**SECURITY
SERVICES**
P.O. BOX 7153 / 600 W. ADAMS ST.
DOTHAN, AL 36302
(334) 793-5720

**FILE COPY**

May 31, 2006

American Buildings Company
Eufaula, AL

**ATTN: John Howard**

RE:    Rate Change

The below chart represents your current pay and bill rates on your various guard services as well as the proposed increases on pay and bill rates.

| Current Pay | Current Bill | Proposed Pay | Proposed Bill |
|---|---|---|---|
| $6.25 | $9.38 | $6.75 | $10.13 |

Thanks a lot for your consideration of this proposal. Please let me know if you need additional information. I look forward to hearing from you in the near future.

Sincerely,

Pat Silberman
Branch Manager
DSI Security Services

*"The safest choice you can make"*

CONFIDENTIAL
Not Intended for Public Disclosure

DSI/REEVES
000004

㉒

Document 2

# DOTHAN

## Payroll Detail Report By Customer    Start Date: 02/28/2006    End Date: 03/05/2007

**Client:**    05AB2-000    AMERICAN BUILDINGS COMPANY

| Date | Tour | Des | Location | Post | Employee | Regular Hours | Regular Rate | Regular Post | Regular Blended | Overtime 1 Hours | Overtime 1 Rate | Overtime 2 Hours | Overtime 2 Rate | Holiday Hours | Holiday Rate | Other/Exempt Hours | Other/Exempt Rate | Differential Type | Differential Amt |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 12/13/2006 | | ADJ | AMERICAN BUILDINGS | ALL | WELLS, ETHEL | 6.00 | | | 0.0000 | | | | | | | | | | |
| 12/13/2006 | | UNIF | AMERICAN BUILDINGS | SECURITY OFFICER | WELLS, ETHEL | | | | | | | | | | | 8.00 | 0.25 | | |
| 12/13/2006 | | UNIF | AMERICAN BUILDINGS | SECURITY OFFICER | REEVES, ROGER | | | | | | | | | | | 8.00 | 0.25 | | |
| 12/13/2006 | 00:00-06:00 | EMP | AMERICAN BUILDINGS | SECURITY OFFICER | WELLS, ETHEL | 6.00 | $6.00 | $6.50 | 6.0000 | | | | | | | | | | |
| 12/13/2006 | 14:00-22:00 | EMP | AMERICAN BUILDINGS | SECURITY OFFICER | REEVES, ROGER | | $6.00 | $6.50 | | 8.00 | $9.00 | | | | | | | | |
| 12/13/2006 | 22:00-00:00 | EMP | AMERICAN BUILDINGS | SECURITY OFFICER | WELLS, ETHEL | 2.00 | $6.00 | $6.50 | 6.0000 | | | | | | | | | | |
| 12/14/2006 | | UNIF | AMERICAN BUILDINGS | SECURITY OFFICER | WELLS, ETHEL | | | | | | | | | | | 6.00 | 0.25 | | |
| 12/14/2006 | | UNIF | AMERICAN BUILDINGS | SECURITY OFFICER | FLOWERS, TIFFINEA | | | | | | | | | | | 2.00 | 0.25 | | |
| 12/14/2006 | | UNIF | AMERICAN BUILDINGS | SECURITY OFFICER | REEVES, ROGER | | | | | | | | | | | 8.00 | 0.25 | | |
| 12/14/2006 | 00:00-06:00 | EMP | AMERICAN BUILDINGS | SECURITY OFFICER | WELLS, ETHEL | 6.00 | $6.00 | $6.50 | 6.0000 | | | | | | | | | | |
| 12/14/2006 | 14:00-22:00 | EMP | AMERICAN BUILDINGS | SECURITY OFFICER | REEVES, ROGER | 8.00 | $6.00 | $6.50 | 5.9227 | | | | | | | | | | |
| 12/14/2006 | 22:00-00:00 | EMP | AMERICAN BUILDINGS | SECURITY OFFICER | FLOWERS, TIFFINEA | 2.00 | $6.00 | $6.50 | 6.0000 | | | | | | | | | | |
| 12/15/2006 | | UNIF | AMERICAN BUILDINGS | SECURITY OFFICER | FLOWERS, TIFFINEA | | | | | | | | | | | 8.00 | 0.25 | | |
| 12/15/2006 | | UNIF | AMERICAN BUILDINGS | SECURITY OFFICER | REEVES, ROGER | | | | | | | | | | | 8.00 | 0.25 | | |
| 12/15/2006 | 00:00-06:00 | EMP | AMERICAN BUILDINGS | SECURITY OFFICER | FLOWERS, TIFFINEA | 6.00 | $6.00 | $6.50 | 6.0000 | | | | | | | | | | |
| 12/15/2006 | 14:00-22:00 | EMP | AMERICAN BUILDINGS | SECURITY OFFICER | REEVES, ROGER | 8.00 | $6.00 | $6.50 | 5.9227 | | | | | | | | | | |
| 12/15/2006 | 22:00-00:00 | EMP | AMERICAN BUILDINGS | SECURITY OFFICER | FLOWERS, TIFFINEA | 2.00 | $6.00 | $6.50 | 6.0000 | | | | | | | | | | |
| 12/16/2006 | | UNIF | AMERICAN BUILDINGS | SECURITY OFFICER | FLOWERS, TIFFINEA | | | | | | | | | | | 12.00 | 0.25 | | |
| 12/16/2006 | | UNIF | AMERICAN BUILDINGS | SECURITY OFFICER | FLOWERS, TIFFINEA | | | | | | | | | | | 12.00 | 0.25 | | |
| 12/16/2006 | 00:00-06:00 | EMP | AMERICAN BUILDINGS | SECURITY OFFICER | FLOWERS, TIFFINEA | 6.00 | $6.00 | $6.50 | 6.0000 | | | | | | | | | | |
| 12/16/2006 | 06:00-12:00 | EMP | AMERICAN BUILDINGS | SECURITY OFFICER | WELLS, ETHEL | 6.00 | $6.00 | $6.50 | 6.0000 | | | | | | | | | | |
| 12/16/2006 | 08:00-12:00 | EMP | AMERICAN BUILDINGS | TRAINING | REEVES, ROGER | 4.00 | $5.15 | $5.85 | 5.9227 | | | | | | | | | | |
| 12/16/2006 | 12:00-18:00 | EMP | AMERICAN BUILDINGS | SECURITY OFFICER | WELLS, ETHEL | 6.00 | $6.00 | $6.50 | 6.0000 | | | | | | | | | | |
| 12/16/2006 | 18:00-00:00 | EMP | AMERICAN BUILDINGS | SECURITY OFFICER | FLOWERS, TIFFINEA | 6.00 | $6.00 | $6.50 | 6.0000 | | | | | | | | | | |
| 12/17/2006 | | UNIF | AMERICAN BUILDINGS | SECURITY OFFICER | WELLS, ETHEL | | | | | | | | | | | 6.25 | 0.25 | | |
| 12/17/2006 | | UNIF | AMERICAN BUILDINGS | SECURITY OFFICER | FLOWERS, TIFFINEA | | | | | | | | | | | 12.00 | 0.25 | | |
| 12/17/2006 | | UNIF | AMERICAN BUILDINGS | SECURITY OFFICER | LINGO, VALERIE | | | | | | | | | | | 5.75 | 0.25 | | |
| 12/17/2006 | 00:00-06:00 | EMP | AMERICAN BUILDINGS | SECURITY OFFICER | FLOWERS, TIFFINEA | 6.00 | $6.00 | $6.50 | 6.0000 | | | | | | | | | | |
| 12/17/2006 | 06:00-12:15 | EMP | AMERICAN BUILDINGS | SECURITY OFFICER | WELLS, ETHEL | 6.25 | $6.00 | $6.50 | 6.0000 | | | | | | | | | | |
| 12/17/2006 | 12:15-18:00 | EMP | AMERICAN BUILDINGS | SECURITY OFFICER | LINGO, VALERIE | 5.75 | $6.00 | $6.50 | 6.0000 | | | | | | | | | | |
| 12/17/2006 | 18:00-00:00 | EMP | AMERICAN BUILDINGS | SECURITY OFFICER | FLOWERS, TIFFINEA | 6.00 | $6.00 | $6.50 | 6.0000 | | | | | | | | | | |
| 12/18/2006 | | UNIF | AMERICAN BUILDINGS | SECURITY OFFICER | WELLS, ETHEL | | | | | | | | | | | 2.00 | 0.25 | | |
| 12/18/2006 | | UNIF | AMERICAN BUILDINGS | SECURITY OFFICER | FLOWERS, TIFFINEA | | | | | | | | | | | 6.00 | 0.25 | | |
| 12/18/2006 | | UNIF | AMERICAN BUILDINGS | SECURITY OFFICER | REEVES, ROGER | | | | | | | | | | | 8.00 | 0.25 | | |
| 12/18/2006 | 00:00-06:00 | EMP | AMERICAN BUILDINGS | SECURITY OFFICER | FLOWERS, TIFFINEA | 6.00 | $6.00 | $6.50 | 6.0000 | | | | | | | | | | |
| 12/18/2006 | 14:00-22:00 | EMP | AMERICAN BUILDINGS | SECURITY OFFICER | REEVES, ROGER | 8.00 | $6.00 | $6.50 | 5.9227 | | | | | | | | | | |
| 12/18/2006 | 22:00-00:00 | EMP | AMERICAN BUILDINGS | SECURITY OFFICER | WELLS, ETHEL | 2.00 | $6.00 | $6.50 | 6.0000 | | | | | | | | | | |
| 12/19/2006 | | UNIF | AMERICAN BUILDINGS | SECURITY OFFICER | WELLS, ETHEL | | | | | | | | | | | 8.00 | 0.25 | | |
| 12/19/2006 | | UNIF | AMERICAN BUILDINGS | SECURITY OFFICER | REEVES, ROGER | | | | | | | | | | | 8.00 | 0.25 | | |
| 12/19/2006 | 00:00-06:00 | EMP | AMERICAN BUILDINGS | SECURITY OFFICER | WELLS, ETHEL | 6.00 | $6.00 | $6.50 | 6.0000 | | | | | | | | | | |
| 12/19/2006 | 14:00-22:00 | EMP | AMERICAN BUILDINGS | SECURITY OFFICER | REEVES, ROGER | 8.00 | $6.00 | $6.50 | 5.9227 | | | | | | | | | | |
| 12/19/2006 | 22:00-00:00 | EMP | AMERICAN BUILDINGS | SECURITY OFFICER | WELLS, ETHEL | 2.00 | $6.00 | $6.50 | 6.0000 | | | | | | | | | | |
| 12/20/2006 | | UNIF | AMERICAN BUILDINGS | SECURITY OFFICER | REEVES, ROGER | | | | | | | | | | | 8.00 | 0.25 | | |
| 12/20/2006 | | UNIF | AMERICAN BUILDINGS | SECURITY OFFICER | WELLS, ETHEL | | | | | | | | | | | 8.00 | 0.25 | | |
| 12/20/2006 | 00:00-06:00 | EMP | AMERICAN BUILDINGS | SECURITY OFFICER | WELLS, ETHEL | 5.75 | $6.00 | $6.50 | 6.0000 | 0.25 | $9.00 | | | | | | | | |
| 12/20/2006 | 14:00-22:00 | EMP | AMERICAN BUILDINGS | SECURITY OFFICER | REEVES, ROGER | 4.00 | $6.00 | $6.50 | 5.9227 | 4.00 | $8.88 | | | | | | | | |
| 12/20/2006 | 22:00-00:00 | EMP | AMERICAN BUILDINGS | SECURITY OFFICER | WELLS, ETHEL | | | | | 2.00 | $9.00 | | | | | | | | |

CONFIDENTIAL
Not Intended for Public Disclosure

DSI/REEVES
000040

*Document 2*

Untitled

In applying the McDonnell-Douglass three-prong analysis, one issue that arises is how does a plaintiff prove pretext? In order to survive summary judgment at this stage, plaintiff may meet his burden of establishing pretext in one of two ways. He must point "to some evidence, direct or circumstantial, from which a factfinder could reasonably either: (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action" [hereinafter "the Fuentes test"]. Jones v. Sch. Dist. of Phila., 198 F.3d 403, 413 (3d Cir.1999) (quoting Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir.1994) and Sheridan v. E.I. DuPont de Nemours & Co., 100 F.3d 1061, 1067 (3d Cir.1996) (en banc)). To establish pretext under the first approach, the plaintiff "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them unworthy of credence." Id. (citing Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1108-09 (3d Cir.1997) (en banc)). It is insufficient to show simply that defendant's employment decision was wrong or mistaken, "since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent or competent." Id. Plaintiff may, however, establish pretext by introducing evidence that an employer's proffered reason was "not merely wrong, but that it was 'so plainly wrong that it cannot have been the employer's real reason." Id. (citing Keller, 130 F.3d at 1109).


Under the second approach of the Fuentes test, a plaintiff may prove pretext by showing that discrimination was "more likely than not" the motivation behind defendant's actions. See Id. at 413. In addition to such direct evidence, the Third Circuit has held that a plaintiff may, by way of indirect evidence, "show that the employer has previously discriminated against [the plaintiff], that the employer has previously discriminated against other persons within the plaintiff's protected class, or that the employer has treated more favorably similarly situated persons not within the protected class." Id. (citing Simpson v. Kay Jewelers, Inc., 142 F.3d 639, 645 (3d Cir.1998)). Harry v. City of Philadelphia, 2004 WL 1387319, *7 (E.D.Pa.,2004). See also, Homes-Naples v. Girard Bd. of Educ., 212 F.Supp.2d 743, 749 (N.D.Ohio,2001)("In order to demonstrate pretext, a plaintiff must do more than merely prove that a defendant's reason for the action is false." See St. Mary's Honor Center v. Hicks, 509 U.S. 502, 509-11, 113 S.Ct. 2742, 2748-49, 125 L.Ed.2d 407 (1993). "A reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." Id. at 515, 113 S.Ct. 2742. A plaintiff may show pretext in one of the three following ways: (1) the employer's proffered reason had no basis in fact; (2) the proffered reason did not actually motivate the termination; or (3) the proffered reason was insufficient to explain the defendant's actions. See Johnson, 215 F.3d at 573; Manzer, 29 F.3d at 1084.").

DOCUMENT (5)

eeoc

The DIGEST Of Equal Employment Opportunity Law
Volume XIII, No. 3

Office of Federal Operations

Summer Quarter 2002

Discrimination Found. Complainant was discriminated against, based on national origin (Arab/Egyptian), and religion (Muslim), when he was not selected for two agency positions. The Commission also awarded complainant $75,000 in non-pecuniary damages and reimbursement for proven medical expense. Ghazzawi v. United States Postal Service EEOC Appeal No. 01A15327 (April 23, 2002).

Pretext
Pretext Found. The Commission found that the agency's reason for not promoting complainant during his detail as a Garbage Truck Driver (a delay in paperwork and a lack of agency funds), was unworthy of belief. The agency official in charge of processing the paperwork averred that he was processing the necessary paperwork and that complainant could be paid at the higher rate. However, the agency was unable to prove that it even began processing the paperwork. Further, complainant's immediate supervisors obstructed his being paid at the higher rate. The Commission found, accordingly, that the agency discriminated against complainant based on race, color, and retaliation. Ford v. Department of the Army, EEOC Request No. 05980506 (December

. When the Commission orders an award of Back Pay, what does it mean?

. Back Pay is an equitable remedy that includes monetary benefits and all forms of compensation, reflecting fluctuations in working time, overtime, rates, penalty overtime, Sunday premium and night work, changing rates of pay, transfers, promotions, and privileges of employment. See Cass v. Department of Veterans Affairs, EEOC Petition No. 04A10014 (March 14, 2002).

2. What is meant by an equitable remedy?

An equitable remedy is "make whole relief" designed to restore the complainant as much as possible to the position he/she would have been in absent discrimination. See Finlay v. United States Postal Service, EEOC Appeal No. 01942985 (April 29, 1997) (citing Albemarle Paper Co. v. Moody, 422 U.S. 405 (1975)). The burden of limiting the remedy rests on the agency. Finlay supra.

3. Where does the Commission get its authority to award back pay?

EEOC's authority to award back pay is derived from the remedial provisions of Title VII of the Civil Rights Act of 1964, as amended, and, by analogy, the Rehabilitation Act of 1973, as amended. See Ferguson v. United States Postal Service, EEOC Request No. 05880848 (May 8, 1990).

6. What are liquidated damages?

Page 1